[No. 31103.   Department One.   December 22, 1949.]

GRACE BARBARA BETCHARD, *Appellant,* v. NORMAN L. IVERSON, *as Executor, et al., Respondents.*[1]

[1]Reported in 212 P. (2d) 783.

*Pebbles & Kuykendall,* for appellant.

*Ralph W. Thompson* and *H. P. Jones,* for respondents Iverson *et al.*

*Eisenhower, Hunter & Ramsdell,* for respondents Charles D. Hunter, Jr., *et al.*

SCHWELLENBACH, J.—This is an appeal from an order of dismissal, after an order had been entered sustaining a de-

murrer to plaintiff's amended complaint, plaintiff having elected not to plead further.

Appellant is the second wife and widow of Frank Betchard, deceased, who died December 24, 1947, leaving surviving his widow, his daughter, Marie K. Iverson, age thirty-six years, and two grandsons, Norman Clyde Iverson and Jeffrey Betchard Iverson, age six and five years, respectively. Subsequent to his death, a granddaughter, Penny Christine Iverson, was born to his daughter on March 4, 1949.

By will the testator disposed of his separate property as follows:

"FIFTH. All of the rest, residue and remainder of my estate, whether real, personal or mixed, wherever situated and whenever acquired, I give, devise and bequeath to NORMAN L. IVERSON, IN TRUST, however, for the uses, purposes and persons hereinafter set forth:  . . .

"(b) My trustee shall pay from the net income of my estate the sum of $350.00 per month to my wife, GRACE BARBARA BETCHARD, for the period of her natural life only, provided, that if my trustee from time to time does not receive sufficient net income from my estate to pay said sum of $350.00 per month to my wife, then my trustee may use any part of the principal of my estate to pay her said monthly payments.

"(c) All the remainder of the net income of my estate which shall be received by my trustee in excess of the sum of $350.00 per month which shall be paid to my wife as hereinabove provided during her lifetime, and all of the net income which shall be received from my estate after the death of my wife, shall be held by my trustee for the use and benefit of my grandchildren, NORMAN CLYDE IVERSON, JEFFREY BETCHARD IVERSON, and any other child or children which may hereafter be born to my daughter, MARIE K. IVERSON, equally, that is to say, share and share alike, or to the survivor or survivors thereof. My trustee is authorized to hold, invest or reinvest any or all of the net income which I have hereby given to my said grandchildren, in any property, either real or personal which in his sole and absolute discretion is just and proper, or if in the sole and absolute discretion of my trustee, the net income of my estate which he shall acquire should be used for the care, maintenance, support or education of any of said grandchildren, he, my

said trustee, may use such grandchild's share of said net income for said purpose.

"If in the discretion of my trustee, it is deemed advisable by him to use any of the net income of my estate for the care, support, maintenance and education of any of my said grandchildren during the time that he, she or they are minors, such grandchild's share thereof may be paid direct by my said trustee to the legal guardian of such grandchild or to any school, college, university, or other institution which said grandchild might be attending for the room, board, lodging or tuition of such grandchild or if in the sole and absolute discretion of my trustee, such grandchild shall have attained an age when he, she or they are fully competent to handle their own money, then my trustee shall have the right, power and authority to pay such grandchild's share of said net income direct to such grandchild.

"(d) At the time when my grandchild, NORMAN CLYDE IVERSON, shall have attained the age of 25 years, and if in the sole and absolute discretion of my trustee said grandchild shall be possessed of qualities, knowledge and understanding whereby he may properly manage his property, then my said trustee shall divide my trust estate equally between my living grandchildren and may pay either in cash or in property, one-third of NORMAN CLYDE IVERSON'S share of my estate to him and when at the time said grandchild shall have attained the age of 35 years, my said trustee may likewise pay or deliver to him an additional one-third of his share of my estate, and when my said grandchild shall have attained the age of 40 years, my trustee shall then pay or deliver to him his entire share of my estate.

"(e) At the time when my grandchild, JEFFREY BETCHARD IVERSON, shall have attained the age of 25 years, and if in the sole and absolute discretion of my trustee said grandchild shall be possessed of qualities, knowledge and understanding whereby he may properly manage his property, then my said trustee may pay either in cash or in property, one-third of JEFFERY BETCHARD IVERSON'S share of my estate to him, and when at the time said grandchild shall have attained the age of 35 years, my said trustee may likewise pay or deliver to him an additional one-third of his share of my estate, and when my said grandchild shall have attained the age of 40 years, my trustee shall then pay or deliver to him his entire share of my estate.

"(f) In the event any other child or children should be born to my daughter, MARIE K. IVERSON, during my lifetime,

then such child or children shall share equally in the net income and the principal of my estate with my grandchildren, NORMAN CLYDE IVERSON and JEFFREY BETCHARD IVERSON, and such other grandchildren shall be entitled to receive or have granted to him, her or them, an equal amount of the net income of my estate as is paid or credited to the respective accounts of my said grandchildren, NORMAN CLYDE IVERSON and JEFFREY BETCHARD IVERSON. Such additional grandchildren, however, shall be entitled to receive from my trustee his, her or their distributive share of the principal of my estate upon his, her or their attaining the age of 21 years.

"In the event any other children are born to my said daughter, MARIE K. IVERSON, after my death, he, she or they shall be entitled to receive an equal share of the net income and principal of my estate as I have hereinabove given to my said grandchildren, NORMAN CLYDE IVERSON, JEFFREY BETCHARD IVERSON, and any other child or children who may be born to my said daughter prior to my death, but the distribution of the principal of my estate payable to any such child or children of my said daughter who shall be born to her after my death must be made by my trustee 21 years after the date of my death."

It is the contention of appellant that the trust created by the will contravenes the rule against perpetuities for the reason that the gift is one to a class—testator's grandchildren; that the class includes members born subsequent to testator's death; but that there is no provision made for the vesting or enjoyment of the interest of any children born to Marie K. Iverson *more* than twenty-one years after the death of the testator.

The rule against perpetuities prohibits the creation of future estates which, by possibility, may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter. Any limitation of a future interest which violates this rule is void. The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation.

It is not a rule of construction, but a positive mandate of law, to be applied irrespective of the intention of the

testator. The proper procedure is to determine the true construction of the will, just as if there were no such thing as the rule against perpetuities, and then to apply the rule rigorously, in complete disregard of the wishes or intention of the testator.

■ A possibility, or even a probability, that the estate or interest may vest within the time of the rule is not enough. If, by any conceivable combination of circumstances, it is possible that the event upon which the estate or interest is limited may not occur within the period of the rule, the limitation is void.

■ The rule against perpetuities is of particular significance in the consideration of class gifts. The generally accepted definition of a class gift is that

". . . it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount on the ultimate number of persons." See 1 Jarman on Wills (6th ed.) 262, § 232.

In the case at bar, the will clearly indicates a class gift. The trust fund is an aggregate sum—the testator's residuary estate; the persons who will eventually take were uncertain in number at the time of testator's death and to be ascertained at a future time because testator has included after-born grandchildren; they are to receive equal shares; and the share of each will depend on the ultimate number of children born to Marie K. Iverson.

■ If a gift is to a class and it is void as to any member or members of the class, it is void as to all. Thus, if a class includes members born after testator's death, with the result that, as to one or more of them, final vesting may, by possibility, be delayed until a time beyond the period of the rule against perpetuities, the gift will be void as to all members. See 41 Am. Jur. 96, Perpetuities and Restraints on Alienation, § 52; and the landmark case of *Leake v. Robinson* (1817), 2 Meriv. 363, 35 Eng. Reprint 979, discussed in 155 A. L. R. 705. There, the gift was to a grandson for life,

then to be paid to such of his brothers and sisters as should attain the age of twenty-five years. The court, in holding the gift void as in contravention of the rule against perpetuities, said:

"Then, assuming that after-born grandchildren were to be let in, and that the vesting was not to take place till twenty-five, the consequence is, that it might not take place till more than twenty-one years after a life or lives in being at the death of the testator. It was not at all disputed that the bequests must for that reason be wholly void, unless the Court can distinguish between the children born before, and those born after, the testator's death. Upon what ground can that distinction rest? Not upon the intention of the testator; for we have already ascertained that all are included in the description he has given of the objects of his bounty. And all who are included in it were equally capable of taking. It is the period of vesting, and not the description of the legatees, that produces the incapacity."

█ Since the rule against perpetuities is concerned solely with the *vesting* of future estates, we must consider when, in general, a class gift vests. If the words of a testator impart a present gift, though the enjoyment thereof be postponed, it is generally held that the gift vests on the death of the testator, since futurity is attached to the enjoyment and not to the substance of the gift. While the law favors the early vesting of future interests, such a rule is difficult to apply when dealing with most class gifts. A class which includes after-born children is subject to fluctuation; the number of its members may increase or decrease, and the size of the gift to each is determined by the ultimate membership of the group. It is this peculiarity of gifts to a class, as contrasted with gifts to individuals, that has led to the rule that, for the purposes of the rule against perpetuities, a class gift is not regarded as vested until the maximum and minimum membership of the class is determined. As long as the class may increase by the birth of additional members, or decrease by the death of members, there can be no vesting. See *Denny v. Hyland,* 162 Wash. 68, 297 Pac. 1083; 2 Simes, Law of Future Interests, 399, § 526, and 400, § 528.

Let us take the will in the present case by its four corners and determine, if we can, what the testator intended to do.  We find a gift to a class—the testator's grandchildren, the issue of his only child, Marie K. Iverson.  The class includes both living grandchildren and those to be born subsequent to testator's death.  Each, or the survivor or survivors, is to share equally, share and share alike; if one of the members dies before he or she is entitled to a distributive share, that share remains in the corpus of the trust and is ultimately distributed among those who reach the ages at which they will respectively take.  The testator has divided the class into three groups— those grandchildren living at the time of making the will; those to be born subsequently, but prior to his death; and those to be born after his death.  As to those living, Norman and Jeffrey, he provided that they should take at the latest when each reached the age of forty years.  That provision would not violate the rule against perpetuities, since they were lives in being at the testator's death.  Neither would the provision as to the second group; they were to take upon reaching the age of twenty-one years.  There are no grandchildren within this group, however.  Our difficulty is with the third group, the after-born; and, as shown above, if the gift is void as to any member of a class, it is void as to all.

■■ Because this is a class gift, we are faced with two problems.  First, when will the class cease to increase in membership, and, second, when can the class no longer decrease in membership?  The testator provided that, as to any other children born to his daughter after his death, he, she, or they, should be entitled to receive an equal share with his other grandchildren.  One such child has already been born, and the law conclusively presumes that Marie K. Iverson can bear additional children until the day of her death. 41 Am. Jur. 71, Perpetuities and Restraints on Alienation, § 26.  Ordinarily, under these circumstances the maximum membership of the class would be determined upon her death.  But that is not the only time at which the class can be closed.  We know of no principle of law or reported case

which holds that a testator who wills a class gift which includes the after-born cannot shorten the period during which the class can increase. The mere fact that he bequeaths to a class does not require him to leave the class open and subject to increase in membership until it is physically impossible for the class to so further increase.

In *Dwyer v. National Newark & Essex Banking Co.*, 103 N. J. Eq. 481, 143 Atl. 625 (affirmed by court of errors and appeals of New Jersey, 104 N. J. Eq. 498, 146 Atl. 914), the court considered the validity of a gift of the remainder to her children, after a life estate to the testator's daughter. It was urged that it was void under the rule against perpetuities because it was not to vest until the earliest of the following:

" '(a) The twenty-first anniversary of the birth of such female child of his daughter Margaret as shall first attain said age of twenty-one years.

" '(b) The twenty-first anniversary of the birth of such male child of said daughter, born after his death, as shall first attain said age of twenty-one years.

" '(c) The thirtieth anniversary of the birth of such male child of said daughter, born before his death, as shall first attain said age of thirty years.' "

The court said:

"The gift to the daughter's children living at the happening of the first of the three events is independent of the trust to secure the lifetime gift to the daughter, for, in whatever form the fund may exist from time to time, only the sum of it is affected by the daughter surviving the event. The life of the daughter plays no part in the gift to her children. If the gift were conditional upon the event alone it would undoubtedly be bad for remoteness for it is possible that it would not happen and the gift therefore not vest within twenty-one years after the death of the testator. The vesting is contingent upon the event. The daughter had no female child and her eldest son was, when the will took effect, but eight years of age, and besides he might have died before reaching thirty. The testator tied up his estate as long as he dared, evidently with the aid of a skilled lawyer, and he guarded against the possibility of violating the rule by providing that payment of the gift shall be made in any event within twenty-one years from

the date of his death. He advanced the day of vesting to come within the rule. In other words the gift was to vest, per share, in the children of his daughter, living on the twenty-first anniversary of his death, if perchance it did not otherwise vest within the time fixed by law. And he did not stop there, but directed the several shares, at all events, however postponed as to vesting or payment, to be actually paid over—as to so much of the estate in which his daughter may have a life beneficiary interest within twenty-one years of her death and the remainder, in which a life is not involved, within twenty-one years of his death."

A prudent testator, desirous of avoiding the consequences of creating a remote future interest, may close the class at any time he may see fit. And that is precisely what has been done by testator in the case at bar. In an excess of caution he provided, as to the after-born children of his daughter, that the distribution of the principal "payable to any such child or children . . . must be made by my trustee twenty-one years after the date of my death." The plain import of this provision is that only those children born within twenty-one years of testator's death shall share in the trust. He has left nothing to chance, but has stated definitely and positively that the class will close and the maximum membership be ascertained, on the twenty-first anniversary of his death. In that respect, this case is distinguishable from *Leake v. Robinson, supra*.

Our second problem is to determine when the class can no longer decrease in number. Which member will be the last to receive his distributive share? Until that person is entitled to take, there is a possibility that the class could decrease in number. Before the gift to the class can vest, that contingency must be removed. Returning to the will, we note that, in point of time, the person whose right to his share could be postponed the longest is Jeffery Betchard Iverson, the younger of testator's two grandchildren living at the time of his death. His share could be withheld by the trustee until he attains the age of forty. Should he die but one day before arriving at such age, his death would decrease the size of the class and the share that would have

been his would be distributed among the remaining members of the class. Hence, the last possibility of a decrease in the membership of the class will not be removed until Jeffrey reaches the age of forty, and the vesting of the gift to the class could conceivably be postponed to that date.

As we have noted above, the maximum membership of the class will be determined twenty-one years after the testator's death; on that date the class is closed as to any increment. However, the minimum membership cannot be determined positively until Jeffrey Iverson attains the age of forty. Since these dates are the limits within which the class can fluctuate in number, the gift to the class must necessarily vest sometime within those limits.

It is obvious that, at the present time, we cannot set the date of vesting with any more exactitude. We do not know how many more children, if any, will be born to Marie K. Iverson within twenty-one years of her father's death; nor do we know to what extent, if any, death may withdraw members from this class. We cannot speculate on the problems that might arise as to distribution of the principal, or what will be the outcome should the trustee exercise the discretionary powers given him. We must assume, and we have assumed throughout this opinion, that the trustee will not invoke those powers. We have concerned ourselves only with the determination of the period of vesting of the gift as a class gift, and in determining that period we have considered the remotest time that is possible under the terms of the will. We must not lose sight of the fact that our sole problem in this case is to determine whether or not the will under consideration violates the rule against perpetuities. We cannot say that the entire class gift vests twenty-one years after testator's death simply because certain members of the class, if then living, would be entitled to his, her, or their distributive shares. True, the after-born children will and must receive their shares at that time. But while they would hold such shares absolutely, so that for all practical purposes their interests have vested, yet there is the possibility that, by the subsequent

death of Norman or Jeffrey Iverson, or both, before each attains age forty, there will be further payments to the distributees in question. As is noted in Gray, The Rule Against Perpetuities, (4th ed.) 396, § 375, if such additional payments are so remote as to fall beyond the limits of the rule, the entire gift is void. Hence, as stated earlier, for the purposes of the rule against perpetuities, a class gift is not regarded as vested until the maximum and minimum membership of the class is determined. And in the instant case, the exact point in time at which the ultimate membership of the class will be established cannot be defined.

All that we can do at present is to determine the limits within which the membership of the class can fluctuate. From these limits, we find that the gift to the class must necessarily vest sometime between the twenty-first anniversary of testator's death and the fortieth anniversary of Jeffrey Iverson's birth. We are not making these conditions. The testator has himself made these conditions in his will. We are not making a new will for the testator. We are merely taking the will which he made, and are applying the rule against perpetuities to it.

Is this period of vesting so remote that it violates the rule? The latest possible date at which the gift could vest is Jeffrey Iverson's fortieth birthday. Is that date within the period of a life or lives in being and twenty-one years, measured from the time at which the instrument creating the future interests is effective, i.e., the death of the testator? The "lives in being" referred to must be indicated by the will; the testator may designate the life or lives, but if he fails to do so, the lives to be used will be inferred from the general context of his will. See 2 Simes, Law of Future Interests, 344, § 491; 41 Am. Jur. 59, Perpetuities and Restraints on Alienation, § 14.

Here the testator has not singled out a particular life or lives to be used as the yardstick. The lives in being he has indicated in his will, all of whom were living at the time of his death, are those of his widow, his daughter, and his two grandsons. The lives of these four persons, then, are

the ones we must use for the purposes of the rule. Since Jeffrey Iverson is one of those lives, even though the vesting of the gift to the class be postponed to his fortieth birthday, the vesting is still well within the limits of the rule against perpetuities.

We conclude, therefore, that, by the terms of the will, the trust created for the benefit of testator's grandchildren does not violate the rule.

The judgment is affirmed.

SIMPSON, C. J., BEALS, and DONWORTH, JJ., concur.

GRADY, J. (concurring)—I concur in the construction placed upon the will of the testator and the conclusion reached sustaining its validity, but I am not in accord with some of the reasoning found in authorities cited, or that which may have been taken from them and adopted by the majority opinion.

---

February 3, 1950. Petition for rehearing denied.