148 P.3d 1069 (2006)
WASHINGTON STATE GRANGE, a Washington corporation, Respondent,
v.
Robert J. BRANDT and Myrna L. Brandt, husband and wife; and all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein, Appellants.
No. 56796-9-I.
Court of Appeals of Washington, Division 1.
December 11, 2006.
*1071 William George Knudsen, Attorney at Law, Bellingham, WA, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, for Appellants.
Daniel Andrew Brown, Brian William Esler, Donald Keith Franklin, Miller Nash LLP, Seattle, WA, for Respondent.
DWYER, J.
¶ 1 The Washington State Grange (Grange) filed an action against Robert and Myrna Brandt seeking to quiet title to a small parcel of real property located adjacent to property owned by the Brandts in Whatcom County. In 1950, the Brandts' predecessors, Raymond and Margaret Gorze, conveyed the disputed parcel by a statutory warranty deed to the Grange's predecessor, the Orchard Grange No. 346.[1] Finding that the reversionary clause of this statutory warranty deed was void in its entirety by application of the rule against perpetuities, the trial court granted the Grange's motion for summary judgment, concluding that the deed effectively conveyed a fee simple absolute interest to the Grange. However, we conclude that the interest granted to the Orchard Grange was one in fee simple determinable with a possibility of reverter vesting exclusively in the Gorzes or their heirs or assigns. Accordingly, we reverse.

FACTS
1. Conveyances to the Orchard Grange
¶ 2 In 1911, Henry and Elizabeth Shields conveyed by deed a parcel of land, approximately 70 feet by 70 feet, from the southeast corner of their property to the Orchard Grange. The Orchard Grange then constructed a building on the property. The parties to this action dispute neither the Orchard Grange's interest nor the Washington State Grange's successive interest in this property.
¶ 3 In 1950, Raymond and Margaret Gorze, successors to the Shields,[2] conveyed a second parcel to the Orchard Grange by statutory warranty deed. This parcel, approximately two acres in size, borders the 1911 deed parcel on that parcel's north and west boundaries. The parcel was deeded from a larger tract of land owned by the Gorzes.
¶ 4 In pertinent part, the 1950 statutory warranty deed reads:
The GRANTORs Margaret Gorze and R.A. Gorze, wife and husband for and in consideration of One Dollar, ($1.00) in hand paid, conveys and warrants to Orchard *1072 Grange # 346, the following described real estate . . . :
. . . ALSO the land herein deeded reverts back to original plot in event it is no longer used for Grange purposes.

Clerk's Papers (CP) at 179 (emphasis added). The 1950 deed parcel was used by the Orchard Grange solely for parking and vehicular access.
¶ 5 In 2004, the Orchard Grange dissolved and the 1950 deed parcel ceased to be used for "Grange purposes," i.e., parking and vehicular access. Subsequently, the Orchard Grange's interest in both the 1911 deed parcel and the 1950 deed parcel succeeded to the Washington State Grange.
2. Conveyance to the Shintaffers
¶ 6 In 1961, the Gorzes conveyed a rectangular 0.63-acre parcel on the northwest side of their 86-acre property to Margaret Gorze's parents, Phil and Elaine Shintaffer. This property shares no boundaries with either the 1911 deed parcel or the 1950 deed parcel. The parcel conveyed in 1961 is currently owned by the John May Living Trust.
3. Conveyances to the Brandts
¶ 7 In 1964, the Gorzes entered into a real estate contract with the Brandts for the sale of the remainder of the Gorzes' property, approximately 85 acres. This real estate contract was fulfilled and, in 1984, a statutory warranty deed was conveyed to the Brandts.
¶ 8 In 2005, the Brandts discovered a legal description error in the 1984 deed by which, they claim, the Gorzes mistakenly failed to convey to them a tract of land which included the 1950 deed parcel.[3] On March 4, 2005, the Brandts obtained a quitclaim deed from Kathleen Warren, the personal representative of Margaret Gorze's estate, which purported to correct the legal description error.[4] As a result of this conveyance, the Brandts claim that they acquired the Gorzes' reversionary interest in the 1950 deed parcel.[5]
¶ 9 On May 18, 2005, the Grange filed this action against the Brandts seeking to quiet title in the Grange to the property conveyed by the 1950 statutory warranty deed. The trial court granted summary judgment to the Grange, holding that the 1950 deed's reversionary *1073 clause was void in its entirety by application of the rule against perpetuities, and that the effect of the void clause was to leave the Grange, as successor to the Orchard Grange, a fee simple absolute interest in the subject property.
¶ 10 The Brandts appeal.

DISCUSSION
1. Standard of Review
¶ 11 This court reviews an order of summary judgment de novo, performing the same inquiry as the trial court. Reynolds v. Hicks, 134 Wash.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wilson Court Ltd. v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998); CR 56(c).
2. 1950 Statutory Warranty Deed
¶ 12 The Grange argues that the Gorzes, by using a statutory warranty deed to transfer their interest in the subject property, intended to convey a fee simple absolute interest to the Orchard Grange. We disagree.
¶ 13 Generally, when construing a deed, the intent of the parties is of paramount importance and courts must ascertain and enforce such intent. Brown v. State, 130 Wash.2d 430, 437, 924 P.2d 908 (1996). However, "where a party conveys property via a statutory warranty deed and the granting clause conveys a definite strip of land, courts `must find that the grantor[ ] intended to convey fee simple [absolute] title unless additional language in the deed[ ] clearly and expressly limits or qualifies the interest conveyed.'" Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n, 156 Wash.2d 253, 264, 126 P.3d 16 (2006) (quoting Brown, 130 Wash.2d at 437, 924 P.2d 908). Thus, if the deed is in statutory warranty form, it carries a presumption of conveying fee simple absolute title. RCW 64.04.030;[6]Brown, 130 Wash.2d at 437, 924 P.2d 908.
¶ 14 The 1950 deed, however, expressly limited the Orchard Grange's estate by using the durational language, "reverts back . . . in event it is no longer used for Grange purposes." This limitation made the Orchard Grange's interest in the granted estate contingent upon the Orchard Grange's continuous use of the land for the specified purpose. This limiting language overcomes the presumption that a fee simple absolute interest was conveyed by the statutory warranty deed. See Kershaw Sunnyside Ranches, 156 Wash.2d at 264, 126 P.3d 16; Brown, 130 Wash.2d at 438-39, 924 P.2d 908. Although the deed conveyance was in statutory warranty form, the Gorzes conveyed something less than an absolute fee simple interest to the Orchard Grange.

3. The Rule Against Perpetuities

¶ 15 In large part, the resolution of this case turns on whether the reversionary language of the 1950 conveyance violates the rule against perpetuities. The Brandts argue that the trial court erroneously applied the rule to entirely invalidate the reversionary clause. The Brandts insist that the limiting language in the deed cut short the Orchard Grange's estate and reserved a future interest exclusively in the Gorzes by either: (1) a possibility of a reverter or (2) a right of entry.[7]
*1074 ¶ 16 The rule against perpetuities provides that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." JOHN CHIPMAN GRAY, THE RULE AGAINST PERPETUITIES § 201 (Roland Gray, 4th ed.1942). Accord Betchard v. Iverson, 35 Wash.2d 344, 348, 212 P.2d 783 (1949). The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation. Betchard, 35 Wash.2d at 348, 212 P.2d 783.
¶ 17 The rule against perpetuities has its origin in English common law. When Washington was granted statehood, English common law became the rule of decision in all Washington courts. CONST. art. XXVII, § 2; RCW 4.04.010; Robroy Land Co. v. Prather, 95 Wash.2d 66, 69, 622 P.2d 367 (1980); Cooper v. Runnels, 48 Wash.2d 108, 291 P.2d 657 (1955). Since then, the rule against perpetuities has been in force and has been applied to invalidate future interests, which, by possibility, may not become vested within a life or lives in being at the time of the grant and twenty-one years thereafter.[8]Robroy Land Co., 95 Wash.2d at 69, 622 P.2d 367.
¶ 18 The rule against perpetuities is not a rule of construction. Instead, it is a positive mandate of law to be applied irrespective of the intent of the grantor. Betchard, 35 Wash.2d at 348-49, 212 P.2d 783. In order to determine whether a conveyed interest violates the rule, a court first must construe the language of the conveyance in precisely the same manner as if there were no rule against perpetuities, and then "apply the rule rigorously, in complete disregard of the wishes or intention of the [grantor]." Id. at 349, 212 P.2d 783.[9]
a. The Rule Against Perpetuities Applies To Executory Interests
¶ 19 The rule against perpetuities operates against those future interests that are not vested at the time of the conveyance. Denny v. Hyland, 162 Wash. 68, 72, 297 P. 1083 (1931). An executory interest is a future interest that is not vested at the time of its creation. Boyd v. Boyd, 24 Md.App. 497, 332 A.2d 328 (1975). By definition, an executory interest is an estate that, upon the happening of a stated event, is automatically divested in favor of a third person transferee as opposed to the grantor. 1 SIMES & SMITH, THE LAW OF FUTURE INTERESTS § 221, at 243 (John A. Borron, Jr., 3d ed.2002). Accord Cole v. Plant, 440 So.2d 1054 (Ala.1983).
¶ 20 In the reversionary clause at issue, the future interest was to be retained in the "original plot." However, real property cannot own an interest in real property. County School Bd. v. Dowell, 190 Va. 676, 58 S.E.2d 38 (1950). It can only be that, upon termination of the determinable fee, the property was to pass to the "then owner" of the "original plot." Thus, the Orchard Grange acquired an interest properly denominated as a "fee simple subject to an executory interest" in the "then owner" of the "original plot."
b. Executory Interest Void
¶ 21 When an interest is certain to either vest or fail before the twenty-first anniversary of the death of a particular person, that person is deemed a measuring life *1075 for the interest. See ROGER A. CUNNINGHAM, WILLIAM B. STOEBUCK & DALE A. WHITMAN, THE LAW OF PROPERTY § 3.19, at 142-43 (1984); GRAY, supra, at § 216-219.2. Generally, an executory interest without a measuring life must be certain to vest or fail within 21 years of the grant or it violates the rule against perpetuities and must be stricken. Stuart Kingston, Inc. v. Robinson, 596 A.2d 1378, 1383 (Del.1991).
¶ 22 The reversionary language in the 1950 deed contains no reference to an ascertainable measuring life. Thus, the executory interest in the "then" owner or owners of the "original plot" violates the rule against perpetuities because of the possibility that the interest of the unidentified "then" owner or owners of the "original plot" would not vest within twenty-one years of the grant.[10] Consequently, the executory interest in the "then" owner or owners of the "original plot" must be stricken.[11]
4. Possibility of Reverter
¶ 23 The Brandts contend that, even if the executory interest was properly stricken as a result of the rule against perpetuities, the trial court erred by ignoring a possibility of reverter interest vesting in the Gorzes. The Brandts claim that, after applying the rule against perpetuities, the interest effectively granted to the Orchard Grange by the 1950 deed was one in fee simple determinable with a possibility of reverter that vested in the Gorzes.
¶ 24 A possibility of reverter is a future interest in the grantor that follows a fee simple determinable interest. Klamath Falls, 7 Or.App. 330, 490 P.2d 515; 1 SIMES & SMITH, supra, § 281, at 326-27. A fee simple determinable, also called a determinable fee simple, is an estate that automatically terminates on the happening of a stated event and reverts to the grantor by operation of law. Alby v. Banc One Fin., 156 Wash.2d 367, 372, 128 P.3d 81 (2006). A determinable fee simple is created by the use of durational language such as "for so long as," "while," "during," or "until." Klamath Falls, 7 Or. App. 330, 490 P.2d 515; RESTATEMENT OF PROPERTY § 44, cmt. 1 (1936). The possibility of reverter arises automatically in the grantor as a consequence of the grantor's conveying a determinable fee estate, and is not subject to the rule against perpetuities because the possibility of reverter is "vested" in the grantor from its creation. Alby v. Banc One Fin., 119 Wash.App. 513, 520 n. 1, 82 P.3d 675 (2003), aff'd, 156 Wash.2d 367, 128 P.3d 81 (2006); McMahon v. Consistory of St. Paul's Reformed Church, 196 Md. 125, 75 A.2d 122 (1950); 3 SIMES & SMITH, supra, § 1235, at 184.
¶ 25 Generally, where an executory interest is void because of the rule against perpetuities, the preceding interest becomes a fee simple absolute. RESTATEMENT OF PROPERTY § 229. Accord In re Estate of Dees, 180 Kan. 772, 308 P.2d 90 (1957). However, where a fee simple determinable is followed by an invalid executory interest, only the executory interest is stricken, not the determinability. RESTATEMENT OF PROPERTY § 229. Accord First Universalist Soc'y v. Boland, 155 Mass. 171, 29 N.E. 524 (1892). Thus, the fee remains determinable and a possibility of reverter vests in the grantor by operation of law. Klamath Falls, 490 P.2d at 518.
¶ 26 After striking the invalid executory interest, the language "reverts back" followed by the phrase "in event it is no longer used for Grange purposes" created a determinable fee simple with a possibility of reverter in the Gorzes, as grantors. This is because the 1950 deed contained language *1076 that clearly fixed the quality of the Orchard Grange's estate and limited its duration. See, e.g., Dowell, 58 S.E.2d at 44 (where deed language attempted to pass reversionary interest to "the farm it was taken from," it was held that the invalid executory interest did not enlarge the determinable fee given the school district because the "other language has clearly fixed its quality and limited its duration"). When the 1950 deed parcel ceased to be used for "Grange purposes," the land reverted to the Gorzes. See, e.g., Klamath Falls, 490 P.2d at 515; Yarbrough v. Yarbrough, 151 Tenn. 221, 269 S.W. 36 (1925) (where deed provided, "when no longer used as such the same is to revert back to the original tract of land," the executory interest in the "original tract of land" was invalid and a reverter to the grantor was created). Accordingly, after applying the rule against perpetuities to invalidate the executory interest, which was invalid from its inception, the interest effectively granted to the Orchard Grange was one in fee simple determinable with a possibility of reverter that vested exclusively in the Gorzes and their heirs or assigns.
5. Grange's Interest
¶ 27 The Brandts contend that the trial court erred in quieting title in the Washington State Grange because the Orchard Grange, at most, had only a determinable fee estate that expired when the land ceased to be used for Grange purposes. The Brandts further claim that, upon the termination of the Orchard Grange's estate, the possibility of reverter vested in the Brandts, as a result of being transferred to the Brandts from the Gorzes via the 1984 statutory warranty deed or the 2005 quitclaim deed.
¶ 28 "The owner of any reversionary interest in land has the power . . . to transfer his interest or any part thereof." RESTATEMENT OF PROPERTY § 159(1). The term "reversionary interest" includes "all reversions and possibilities of reverter." Id. at cmt. a. A possibility of reverter is freely alienable by deed conveyance because it is immediately vested in the grantor upon its creation. Alby, 119 Wash.App. at 520, 82 P.3d 675.
¶ 29 However, a possibility of reverter does not run with the land; it vests solely in the grantor and the grantor's heirs or assigns. 1 SIMES & SMITH, supra, § 282, at 330-31; RESTATEMENT OF PROPERTY § 154, cmt. g. Accord School District No. 6 v. Russell, 156 Colo. 75, 396 P.2d 929 (1964). In other words, a possibility of reverter remains solely in the grantor unless the reverter interest is expressly transferred to a third party.
¶ 30 The possibility of reverter arising from the 1950 deed vested exclusively in the Gorzes, as the grantors, not in the land the Gorzes eventually sold to the Brandts or the Shintaffers. Thus, the only means by which the Brandts could have acquired the possibility of reverter is if they received the reverter interest from the Gorzes by either purchase or devise. However, the Gorzes did not transfer their reverter interest to the Brandts by the 1984 deed. That deed merely fulfilled the real estate contract between the Gorzes and the Brandts involving the transfer of the Gorzes' real property. It neither expressly nor impliedly transferred any future reversionary interest held by the Gorzes.
¶ 31 The Brandts contend, however, that even if they did not acquire the Gorzes' reversionary interest via the 1984 deed, the 2005 quitclaim deed passed all of the Gorzes' interest in the property, including the reverter interest in the 1950 deed parcel, to the Brandts. The trial court did not resolve the factual dispute which arose as a result of this claim being raised below. Instead, the court reached its decision to quiet title in the Grange simply by reviewing the "four corners" of the 1950 deed.
¶ 32 The estate of Margaret Gorze is not a party to this action. We cannot determine the interest, if any, held by the estate in the real property at issue. The record before us is not sufficiently developed for us to make such a determination. In the absence of such a determination, however, it is not possible to resolve the Brandts' claim to title. Thus, on the record presented, the Brandts have failed to demonstrate that they are *1077 entitled to judgment as a matter of law. CR 56(c).
¶ 33 But the issue before us is the propriety of the trial court's order granting summary judgment quieting title in the Grange. A "plaintiff in an action to quiet title must prevail, if he prevails at all, on the strength of his own title, and not on the weakness of the title of his adversary." City of Centralia v. Miller, 31 Wash.2d 417, 422, 197 P.2d 244 (1948).[12] For the reasons set forth above, summary judgment was entered in error. The Grange has no interest in the disputed real property, its fee interest having terminated upon the cessation of the land's use "for Grange purposes."
¶ 34 Accordingly, the trial court's order of summary judgment quieting title in the Grange is reversed and the cause is remanded for further proceedings consistent with this opinion.
WE CONCUR: BAKER and BECKER, JJ.
NOTES
[1] It is uncontested that the Washington State Grange is the successor in interest to the Orchard Grange.
[2] Margaret Shintaffer acquired the Shields' property in 1940 following a series of conveyances. She later married Raymond Gorze.
[3] In 1917, Elizabeth Shields conveyed land from the southeast corner of the Shields' estate, including property which would become the 1950 deed parcel, to her son, John G. Shields. In 1940, Margaret Shintaffer, following a series of conveyances, acquired the land deeded to John Shields. The Brandts claim that, in 1984, the Gorzes conveyed that same land to the Brandts, in addition to the rest of the Gorzes' property. However, the legal description of the property conveyed by the 1984 deed excluded the land deeded to John Shields in 1917 and acquired by Margaret Gorze in 1940.
[4] The Brandts, the Grange, and Kathleen Warren agree that the Gorzes intended to convey to the Brandts the majority of the land deeded to John Shields in 1917 and acquired by Margaret Gorze in 1940. They also agree that the legal description in the 1984 deed erroneously failed to include this land. It is disputed whether the Gorzes intended to also convey their interest in the 1950 deed parcel to the Brandts. The Brandts claim that the legal description also inadvertently excluded the 1950 deed parcel. Claiming that the quitclaim deed (which included a description of all of the property deeded to John Shields in 1917) corrected the erroneous legal description, the Brandts insist that by obtaining the quitclaim deed they acquired the Gorzes' reversionary interest in the 1950 deed parcel.

The Grange counters that the Gorzes did not intend to convey to the Brandts a reversionary interest in that parcel. Warren declared under oath that she never intended to transfer the Gorzes' reversionary interest in the 1950 deed parcel to the Brandts.
[5] Whether Warren intended to transfer the Gorzes' reversionary interest in the 1950 deed parcel to the Brandts was not resolved in the trial court. In a declaration filed with the trial court, Warren stated that it was "never my intention to quit claim to Robert J. Brandt and Myrna L. Brandt any interest the Estate of Margaret Jane Gorze may have had, if any, in the property described in the 1950 deed from [the Gorzes] to the Orchard Grange # 346." CP at 45. Warren declared that the Brandts led her to believe that the quitclaim deed was only needed to correct an erroneous legal description and did not have any other legal effect. The Brandts claim to the contrary, noting that Warren was benefited by the advice of independent counsel in deciding to execute the quit claim deed in favor of the Brandts.

Because it granted summary judgment to the Grange, the trial court did not believe that this dispute was one involving a material fact. However, given our resolution of the issues on appeal, resolution of this factual dispute is necessary to determine the validity of the Brandts' claim.
[6] "Every deed in [warranty] form . . . shall be deemed and held a conveyance in fee simple to the grantee." RCW 64.04.030.
[7] The right of entry is the future estate that follows a present estate upon condition subsequent. RESTATEMENT OF PROPERTY § 24 (1936). The following words are usually held to create conditions subsequent: "upon condition that," and "provided that." Id. § 45, cmt. j. In cases where the language is ambiguous, Washington courts have a preference for a fee on a condition subsequent rather than a fee simple determinable, because of the latter's automatic forfeiture. See Halvorsen v. Pacific County, 22 Wash.2d 532, 537, 156 P.2d 907 (1945) ("The general rule is that a deed which conveys an estate in fee simple but provides for a forfeiture or reversion upon the happening of some event or condition, creates an estate in fee simple subject to a condition subsequent."); Mouat v. Seattle, Lake Shore & E. Ry., 16 Wash. 84, 47 P. 233 (1896). However, in this case, the deed language is clearly durational ("in event it is no longer used for") as opposed to conditional ("on condition that," "provided that"). Because there is no ambiguity in the language used, the interest conveyed in the deed was a determinable interest, not an interest subject to a condition subsequent. Therefore, the future interest conveyed in the 1950 deed was not a right of entry.
[8] For trusts, a special statutory form of the rule against perpetuities adopts the "wait and see" rule which makes the operation of the common law rule depend upon actual events rather than upon possibilities. RCW 11.98.130, .140, .150; Robroy Land Co., 95 Wash.2d at 77 n. 4, 622 P.2d 367. However, the instrument at issue here is not a trust; hence, the special statutory provision for trusts does not apply.
[9] As one notable scholar explains, "the existence of the rule cannot be even taken into consideration in construing the instrument. Thus the court in construing an instrument is limited to determining what interests the maker intended to create. Having made such determination, the court must then and only then ascertain if any of the limitations so recognized will violate the rule. If so the interest must fail." 3 THOMPSON ON REAL PROPERTY § 28.02(b), at 567 (David A. Thomas, 2d ed. 1998).
[10] Indeed, the Orchard Grange could have continued to use the land "for Grange purposes" in perpetuity. See, e.g., City of Klamath Falls v. Bell, 7 Or.App. 330, 490 P.2d 515 (1971) (Conveyance to city for "so long as" it used land for a library granted city a fee simple determinable interest. City could have used land for a library in perpetuity. Subsequent executory interest was therefore void as violative of rule against perpetuities.).
[11] Given that the John May Living Trust owns 0.63 acre of land, which is also part of the "original plot," it was possible that, were the executory interest not violative of the rule against perpetuities, the executory interest in the "original plot" would have vested in more than one party.
[12] The fact that the Estate of Margaret Gorze is not a party to this action does not operate to the benefit of either the Brandts or the Grange. A claimant's "ownership should be determined according to the title he holds rather than according to whether other parties . . . appeared to press their claim." King County v. Squire Inv. Co., 59 Wash.App. 888, 899, 801 P.2d 1022 (1990).