# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GENE K. WIGGANS,

Appellant,

v.

KELLY D. WIGGANS-CRAWFORD, a
married woman and MASON
CRAWFORD, her husband; and the
MARITAL COMMUNITY composed
thereof; and OTHER PERSONS
OR PARTIES UNKNOWN CLAIMING
ANY RIGHT, TITLE, ESTATE, LIEN OR
INTEREST IN THE REAL ESTATE
DESCRIBED IN THE COMPLAINT,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 76917-1-I

UNPUBLISHED OPINION

FILED: June 25, 2018

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 JUN 25 AM 9: 52

DWYER, J. — Gene Wiggans appeals from the trial court's order quieting

title in the name of Kelly Wiggans-Crawford. On appeal, Gene contends that the

trial court's findings are not supported by substantial evidence and the trial

court's findings do not support its conclusions of law. Finding no error, we affirm.

I

On August 12, 1999, I. Janelle Johnson executed the following

warranty deed:

> THE GRANTOR, I. JANELLE JOHNSON, unremarried
> widow of BERNARD E. JOHNSON, and as P.R. of the Estate of
> BERNARD E. JOHNSON, for and in consideration of ONE
> HUNDRED FIFTEEN THOUSAND AND NO/100 DOLLARS
> ($115,000.00) in hand paid, conveys and warrants title[] to DEAN

WIGGANS and JAYNE WIGGANS, husband and wife, as to all present interest in the real estate described below and KELLY D. WIGGANS, a single person, as to an expectancy only – as joint tenant; as Joint Tenants with Right of Survivorship, the following described real estate situated in the County of King, State of Washington . . . .

Johnson died in 2008. On September 15, 2014, Dean and Jayne Wiggans executed a quit claim deed to themselves and to their son, Gene Wiggans, conveying "all of Grantor's right, title and interest" in the property. On December 22, 2014, Dean and Jayne[1] executed another quit claim deed, conveying "to GENE K. WIGGANS, dealing in his separate property and DEAN WIGGANS and JAYNE WIGGANS as to a life estate all of Grantor's right, title and interest" in the property.[2] Dean and Jayne each died in 2015.

On March 30, 2016, Gene filed this action to quiet title to the property in his name. Kelly Wiggans-Crawford counterclaimed, asserting that the property should be quieted in her name pursuant to the warranty deed. Both parties moved for summary judgment. The Honorable Andrea Darvas denied both motions.

Kelly thereafter obtained the declaration of Johnson's daughter, Pamela Burgess. Burgess stated that Dean was emotionally and physically abusive and that Kelly would often be the target of Dean's anger. Burgess explained that she and Kelly were like sisters and that Johnson urged Jayne to leave Dean on a

---

[1] For clarity, Dean, Jayne, and Gene Wiggans are referred to by their given names, as is Kelly Wiggans-Crawford.

[2] Both of these quit claim deeds purported to convey the property pursuant to chapter 64.80 RCW, Washington's Uniform Real Property Transfer on Death Act. Pursuant to RCW 64.80.060(2), a transfer on death deed must "state that the transfer to the designated beneficiary is to occur at the transferor's death." Neither of the quit claim deeds executed by Dean and Jayne purported to convey any property upon their death.

number of occasions. Burgess stated that Johnson's intent in selling her property was to ensure that Kelly would always have a place to live, regardless of her relationship with Dean.

Gene obtained a declaration from attorney Barry Kombol, the drafter of the warranty deed. Kombol stated that the vesting language of the warranty deed was provided by Dean. Kombol stated that Dean's intent was not to create a joint tenancy with rights of survivorship or a life estate. Rather, Kombol stated that he was

> specifically instructed to craft language that would accomplish two tasks: first, to ensure that Kelly Wiggans would obtain no present interest in the property that would allow her any rights in the property prior to the death of Dean and Jayne Wiggans and specifically to prevent Kelly Wiggans from having any ability to prevent Dean and Jayne Wiggans from conveying the property however they see fit during their life; and second, to ensure that if Dean Wiggans and Jayne Wiggans passed away prior to them conveying the property to someone else during their life, that Kelly Wiggans would obtain the property and not Gene Wiggans.

Kombol further stated that he was "intending to create . . . a transfer on death deed before the statute creating such deeds existed."

Kelly also deposed attorney Kombol. When asked about his declaration, Kombol stated that "I'm ashamed to say that there were a couple other things in this – in this declaration that aren't exactly how I would say – how would I say what I was doing." Kombol confirmed that, although Johnson was the grantor, he never spoke with her or otherwise obtained instructions from her regarding her intent in conveying the property. Rather, Kombol received his instructions directly from Dean. Kombol explained that he was "virtually certain that it came from Dean, because only a guy as powerful as Dean could have had me do

something like this, been so insistent like this to have me draft language that I've never done before." Kombol stated that he was "trying to make [Kelly] both a joint tenant but have – I was trying to create an instrument where she had a right of survivorship but had no present interest. And that – that may be an interest that doesn't and can't exist."

Both parties again moved for summary judgment. The Honorable Chad Allred denied both motions. The parties then agreed to try the case, permitting Judge Allred to "make all necessary legal and factual determinations based upon admissible evidence contained in the records, motions, declarations, and pleadings . . . and to determine the rights and responsibilities of the parties as to the real property at issue in this case on the merits without trial."

On May 4, 2017, Judge Allred entered the trial court's revised findings of fact and conclusions of law.

### Findings of Fact

On August 12, 1999, I. Janelle Johnson executed a Statutory Warranty Deed to transfer real property to Dean Wiggans and Jayne Wiggans, who were husband and wife, and to Dean's and Jayne's daughter, Kelly D. Wiggans (now Wiggans-Crawford). As expressed in the language of the Deed, the objective, mutual intent of the parties to the Deed was this: (1) Dean and Jayne would possess the property during their lifetimes; (2) if Kelly outlived Dean and Jayne, Kelly would own the property upon the later of Dean's death or Jayne's death; and (3) if Kelly did not outlive Dean and Jayne, Dean and Jayne would own the property.

Jayne died in August 2015. Dean died on November 21, 2015. Kelly is alive.

### Analysis and Conclusions of Law

There is no evidence that the parties to the Deed were attorneys. The objective, mutual intent explained above is consistent with—from a non-attorney's perspective—the Deed's

grant of "all present interest" to Dean and Jayne, "an expectancy only" to Kelly, and a "Right of Survivorship" to all grantees. Even though the Deed includes the term "joint tenant(s)," the facts do not support a conclusion that the parties created the legal interest that the law calls a "joint tenancy."

Dean or Jayne may have had their own desire or intent as to what the Deed would accomplish. But that individual, subjective intent does not control. Likewise, the re-recording of the August 1999 Deed in December 1999 is not material. There is no evidence that the grantor, Johnson, participated in the re-recording or even knew about it.

In the Deed, Johnson conveyed:

- A life estate to the marital community of Dean and Jayne to last as long as Dean or Jayne remained alive;
- A contingent remainder in fee simple to Kelly that (a) was contingent upon Dean and Jayne dying before Kelly and (b) would vest if and when Dean and Jayne were both dead;
- A contingent remainder in fee simple to the marital community of Dean and Jayne that (a) was contingent upon Kelly dying before Dean and Jayne and (b) would vest if and when Kelly died.

Upon Dean's death, Kelly's interest vested and she became the sole owner of the property. Title to the property should be quieted in Kelly.

(Footnotes omitted.) Judge Allred entered judgment quieting title to the property solely in Kelly's name. Gene appeals.

II

Gene contends that the trial court's findings are not supported by substantial evidence. This is so, he asserts, because the trial court's findings are contrary to the plain language of the warranty deed and the actions of the parties following the conveyance. We disagree.

"In a bench trial where the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the trial court's

findings of fact and whether those findings support the court's conclusions of law." Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 63, 277 P.3d 18 (2012). "Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." Newport, 168 Wn. App. at 63-64 (internal quotation marks omitted) (citing Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)). "If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). We review conclusions of law de novo. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 880.

"[D]eeds are construed to give effect to the intentions of the parties, and particular attention is given to the intent of the grantor when discerning the meaning of the entire document." Zunino v. Rajewski, 140 Wn. App. 215, 222, 165 P.3d 57 (2007). The interpretation of a deed is a mixed question of fact and law. Affil. FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 459 n. 7, 243 P.3d 521 (2010). "What the parties intended is a question of fact and the legal consequence of that intent is a question of law." Newport, 168 Wn. App. at 64 (citing Affil. FM, 170 Wn.2d at 459 n. 7).

The intent of the parties is determined by the language of the deed as a whole. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 880. "It has long been the rule of our state that, where the plain language of a deed is unambiguous, extrinsic evidence will not be considered." Newport, 168 Wn. App. at 64 (citing

Sunnyside Valley Irrig. Dist., 149 Wn.2d at 880). Where ambiguity exists, extrinsic evidence may be considered to ascertain the intent of the parties to the deed. Newport, 168 Wn. App. at 65.

Here, the trial court weighed the evidence and made a factual finding that "the objective, mutual intent of the parties to the Deed was this: (1) Dean and Jayne would possess the property during their lifetimes; (2) if Kelly outlived Dean and Jayne, Kelly would own the property upon the later of Dean's death or Jayne's death; and (3) if Kelly did not outlive Dean and Jayne, Dean and Jayne would own the property." The trial court's findings lead to only one conclusion: Dean and Jayne received a life estate with a contingent remainder in fee simple that would vest upon Kelly predeceasing them, and Kelly received a contingent remainder in fee simple that would vest upon both Dean and Jayne predeceasing her. Because Dean and Jayne predeceased Kelly, Kelly's interest vested and she now owns the property in fee simple absolute.[3]

The trial court's findings are supported by substantial evidence. The pertinent portion of the warranty deed states that Johnson "conveys and warrants title[] to DEAN WIGGANS and JAYNE WIGGANS, husband and wife, as to all present interest in the real estate described below and KELLY D. WIGGANS, a single person, as to an expectancy only – as joint tenant; as Joint Tenants with Right of Survivorship."[4]

---

[3] Dean and Jayne could not have conveyed away more than they owned, which was a life estate and a contingent remainder in fee simple. Thus, even if the quit claim deeds executed by Dean and Jayne did grant Gene an interest in the property, his interest was extinguished when Dean and Jayne predeceased Kelly.

[4] Although the warranty deed purports to convey the property to Dean, Jayne, and Kelly as "joint tenant(s)," the trial court correctly noted that the "four unities" (time, title, interest, and

A "present interest" is a possessory interest. See RESTATEMENT (THIRD) OF PROP: (WILLS & DON. TRANS.) § 24.1 (AM. LAW INST. 2011) ("A present interest is an ownership interest in property that entitles the owner to possession or enjoyment of the property."). Although the warranty deed purports to convey an "expectancy" to Kelly, an "expectancy" interest is not a legal term of art recognized in Washington or in the Restatement.[5] Rather, future interests are characterized as either contingent or vested. "A future interest is contingent if it might not take effect in possession or enjoyment. A future interest is vested if it is certain to take effect in possession or enjoyment." RESTATEMENT § 25.3.

---

possession) were not present. In re Domestic P'ship of Walsh v. Reynolds, 183 Wn. App. 830, 853-54, 335 P.3d 984 (2014). Gene appears to concede this. "In the present case, the parties seem to agree that the Warranty Deed failed to create a joint tenancy since the four unities, essential in order to create a joint tenancy, were not present in the Warranty Deed." Br. of Appellant at 28.

Gene contends that, if we conclude that Kelly does have a vested interest in the property, we should also find that the parties intended to create a joint tenancy. Because the attempt at creating a joint tenancy failed, he avers, we should conclude that Gene and Kelly became tenants in common by operation of law. But the trial court found that the parties did not intend to create an interest identical to the legal concept of a joint tenancy. We do not substitute our judgment for that of the trial court on factual matters. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 879-880.

[5] Gene cites to various Washington cases in support of his contention that an "expectancy" is a future interest in real property that can be eliminated. None support his assertions. Rather, these cited cases discuss an "expectancy" interest in a variety of contexts ranging from marital dissolution to public easements.

Gene relies primarily on Gillis v. King County, 42 Wn.2d 373, 255 P.2d 546 (1953). In that case, plaintiffs brought suit to quiet title to a street that was dedicated to the public. Plaintiffs asserted that, because the street in question was never opened, the public's interest in the street was vacated pursuant to the automatic vacation statute. Gillis, 42 Wn.2d at 375. Although the statute had been amended so as to prevent automatic vacation, thus saving the public's interest in the street, the plaintiffs asserted that they already had a vested interest in the street that could not be extinguished by a legislative enactment. Division II of this court disagreed. Division II explained that the plaintiffs did not have a vested interest in the street but, rather, "a mere expectancy, dependent upon the street remaining unopened for the full five-year-period." Gillis, 42 Wn.2d at 377.

Gillis does not support Gene's contention. The plaintiffs in Gillis were never conveyed any real property. Rather, the only way that the plaintiffs could have obtained an interest in the property was by virtue of the automatic vacation statute. But that statute was amended, so the plaintiffs never had any interest in the property. Although various courts have employed the term "expectancy" to describe a potential interest in property, the term is used generally to explain why the owners of property abutting a public easement do not have any sort of vested interest in the easement. Gene cites to no authority using the term to describe a future interest in real property conveyed to an individual.

- 8 -

Importantly, a future interest "is a present ownership interest in property, even though the owner's right to possession or enjoyment is postponed until some time in the future and may be contingent or vested." RESTATEMENT § 25.1 cmt. a.

The plain language of the warranty deed establishes that Kelly's future interest in the property was not vested but, rather, was contingent. Because even a contingent interest is still an ownership interest in the property, Dean and Jayne could not possibly have held the property in fee simple absolute. See RESTATEMENT § 24.2 cmt. b ("Because the fee simple absolute (land) and absolute ownership (personal property) are present interests that are unlimited in duration, they are never followed by a future interest."). Moreover, because the deaths of both Dean and Jayne or the death of Kelly was certain to happen, Dean and Jayne could not have held a fee simple defeasible. See RESTATEMENT § 24.3 cmt. a ("An estate that terminates on the happening of an event that must occur (e.g., the death of an individual or the expiration of a term certain) cannot be a fee estate.").

Dean and Jayne's possessory interest in the property was thus a life estate. A life estate is "a *present interest* that terminates on the death of an individual whose life serves as the governing life," and "can be qualified by language specifying one or more events that can terminate the estate before or extend the estate beyond the death of the individual whose life serves as the governing life." RESTATEMENT § 24.5 (emphasis added). Because the warranty deed granted both Dean and Jayne as well as Kelly a "right of survivorship," Dean and Jayne also received a contingent remainder in fee simple that would

have vested if Kelly predeceased both of them (at which point the life estate would have terminated).[6]

The language of the warranty deed provides a quantum of evidence sufficient to persuade a rational fair-minded person that the trial court's findings are true. Thus, those findings are supported by substantial evidence.

Extrinsic evidence also supports the trial court's findings. Contrary to Gene's assertions on appeal, the appropriate focus for discerning intent is not Dean's unilateral and subjective intent, as evidenced by his later attempts to execute quit claim deeds and extinguish Kelly's interest. Rather, the court should give "particular attention . . . to the intent of the grantor when discerning the meaning of the entire document."[7] Zunino, 140 Wn. App. at 222. As discussed herein, the only evidence of the intent of the grantor comes from her daughter's declaration. In that declaration, Burgess stated that Johnson's intent in selling her property was to ensure that Kelly would always have a place to live, regardless of her relationship with Dean. This evidence supports the understanding that Johnson would not have conveyed any interest to Dean that would have allowed him to extinguish Kelly's future interest.

---

[6] Dean and Jayne's future interest might be more appropriately called an executory interest. A contingent remainder is a future interest that vests automatically upon the happening of some event, such as the death of a person. But an executory interest is a future interest that vests by cutting short another interest. See Wash. State Grange v. Brandt, 136 Wn. App. 138, 148-49, 148 P.3d 1069 (2006). Because Dean and Jayne had a life estate in the property, but would have received a fee simple had Kelly predeceased them, the vesting of the fee simple would have cut short the life estate. The Restatement has dispensed of the term "executory interest" in favor of characterizing all future interests as either vested or contingent interests. RESTATEMENT § 25.1 cmt. b.

[7] We note that this was not a typical arms-length transaction between a seller and a purchaser of real property. Rather, the record establishes that the grantor had a special relationship with the Wiggans family and conveyed her property with the specific intent to ensure that Kelly would have an interest in that property.

The trial court found that the objective and mutual intent of the parties was "(1) Dean and Jayne would possess the property during their lifetimes; (2) if Kelly outlived Dean and Jayne, Kelly would own the property upon the later of Dean's death or Jayne's death; and (3) if Kelly did not outlive Dean and Jayne, Dean and Jayne would own the property." Substantial evidence supports the trial court's findings and those findings, in turn, support the conclusions of law. There was no error.

Affirmed.

We concur: