# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In re the Estate of | No.  47278-3-II |
| CAROL COLLISTER, | |
| Deceased. | PUBLISHED OPINION |
| DONNA COLLISTER and BARBARA GUPTA, | |
| Respondents, | |
| v. | |
| ROCKY FELLER, as Personal Representative and Individually, | |
| Appellant. | |

BJORGEN, C.J. — Rocky Feller, personal representative of the estate of Carol Collister,
appeals the trial court's order directing him to distribute the proceeds of a life insurance policy to
other individuals as directed in Collister's will, rather than to himself as the policy beneficiary.
We hold that a testator may direct the distribution of life insurance proceeds payable to the
testator, his or her estate, or his or her personal representative.  However, because Collister's life
insurance policy was payable to Feller in his personal capacity rather than as Collister's
representative, Collister was not authorized to direct distribution of the proceeds via will.

Accordingly, we reverse the trial court's order and remand for proceedings consistent with this opinion.

FACTS

On November 16, 2009, Collister designated Feller the sole beneficiary of a $25,000 life insurance policy. Feller and Collister had been married, but divorced in 2004. For purposes of the life insurance policy, Collister listed Feller as a "friend." Clerk's Papers (CP) at 19.

Almost four years later, on October 3, 2013, Collister executed a will. The beneficiaries under the will included Feller and Collister's sisters, Donna Collister[1] and Barbara Gupta. Among the provisions of the will was a directive to distribute the proceeds of two life insurance policies, one of which was the $25,000 policy payable to Feller:

> Having in mind that I have certain life insurance policies, one in the amount of $25,000.00 and one in the amount of $60,000.00, I give, devise and bequeath the proceeds of said insurance as follows:
>
> A. The $ 25,000.00 policy proceeds shall go unto BARBARA GUPTA and DONNA COLLISTER, share and share alike. In the event either should predecease me, then her share shall go unto ROCKY FELLER.

CP at 4.

Collister died on May 23, 2014. Her will was admitted to probate, and Feller was appointed personal representative. During probate, Donna and Gupta petitioned the trial court to order Feller to distribute the proceeds of the $25,000 life insurance policy to them in accordance with Collister's will. The trial court agreed that the will provision governed distribution of the proceeds and ordered Feller to disburse them to Donna and Gupta.

Feller appeals the trial court's order.

---

[1] In this opinion Donna Collister will be referred to by her first name to distinguish her from the decedent, Carol Collister. No disrespect is intended.

ANALYSIS

Feller argues that the trial court erred in concluding that the proceeds of the $25,000 life insurance policy payable to Feller were the corpus of a testamentary trust benefitting Donna and Gupta that Feller must distribute to them. We agree that Feller is not obligated to distribute the proceeds to Donna and Gupta.

We review probate proceedings de novo, as they represent an exercise of a trial court's equitable powers. *In re Estate of Bowers*, 132 Wn. App. 334, 339, 131 P.3d 916, 919 (2006). We also review interpretive legal questions de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014) (interpretation of statutes); *Ameriquest Mortg. Co. v. Office of Att'y Gen. of Washington*, 177 Wn.2d 467, 478, 300 P.3d 799 (2013) (interpretation of case law); *In re Estate of Wright*, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008) (interpretation of wills). This appeal involves a probate proceeding requiring us to engage questions of statutory, case law, and will interpretation. Therefore, our review is de novo.

I. INAPPLICABILITY OF THE TESTAMENTARY DISPOSITION OF NONPROBATE ASSETS ACT

Feller argues that testamentary disposition of life insurance payments is prohibited by statute. We disagree and hold that the testamentary distribution of life insurance proceeds is not governed by statute.

In interpreting statutes, we look first to the statute's plain language in order to give effect to legislative intent. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). "When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone." *Asche v. Bloomquist*, 132 Wn. App. 784, 790, 133 P.3d 475 (2006). When assessing plain language, we give words in a statute their common and ordinary meaning. *HomeStreet*, 166 Wn.2d at 451.

The Testamentary Disposition of Nonprobate Assets Act (TDNAA), among other matters, authorizes a testator to transfer nonprobate assets upon death via will as long as the will provisions are sufficiently specific. RCW 11.11.020(1). The TDNAA was enacted in 1998 to

> (1) [e]nhance and facilitate the power of testators to control the disposition of assets that pass outside their wills;
>
> (2) Provide simple procedures for resolution of disputes regarding entitlement to such assets; and
>
> (3) Protect any financial institution or other third party having possession of or control over such an asset and transferring it to a beneficiary duly designated by the testator, unless that third party has been provided notice of a testamentary disposition as required in this chapter.

RCW 11.11.003. We must liberally construe the provisions of the TDNAA to promote its express statutory purposes. RCW 11.11.005(1)(a). However, we may not construe those provisions in a manner that "alter[s] the community or separate property nature of any asset passing outside a testator's will or any individual's community or separate rights to the asset." RCW 11.11.005(1)(e). Similarly, the TDNAA specifies that "[t]his chapter . . . has no bearing on the right of a person to transfer a nonprobate asset under its terms in the absence of a testamentary provision under this chapter." RCW 11.11.007.

Under the TDNAA, "nonprobate asset" means "a nonprobate asset within the meaning of RCW 11.02.005," with several exceptions not relevant to this appeal. RCW 11.11.010(7)(a).[2] RCW 11.02.005(10), in turn, defines "nonprobate asset" as "those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written

---

[2] Our legislature amended RCW 11.11.010 in 2014, and the amended language went into effect after Collister's death. However, the amendments are not relevant here.

instrument or arrangement other than the person's will."[3] RCW 11.02.005(10), however, also expressly specifies that "'[n]onprobate asset' does not include: *A payable-on-death provision of a life insurance policy*, annuity, or other similar contract, or of an employee benefit plan." (Emphasis added.) Therefore, the TDNAA plainly and expressly excludes payable-on-death provisions of life insurance policies from its definition of nonprobate assets and, thus, from any of its provisions that apply to such assets.

The TDNAA also provides that

> [s]ubject to community property rights, upon the death of an owner the owner's interest in any nonprobate asset specifically referred to in the owner's will belongs to the testamentary beneficiary named to receive the nonprobate asset, notwithstanding the rights of any beneficiary designated before the date of the will.

RCW 11.11.020(1). This plain language authorizes disposition of nonprobate assets via will. However, because a payable-on-death provision of a life insurance policy is not a nonprobate asset within the meaning of the statutory language, this provision does not authorize testators to disburse life insurance proceeds via will. Such a disposition is neither authorized nor prohibited by the statute, as life insurance proceeds are plainly excluded from the TDNAA.

Feller asks us to infer from this exclusion that testamentary distribution of life insurance proceeds is in fact prohibited. However, the plain language of the relevant statutory provisions only establishes that the TDNAA is *inapplicable* to life insurance proceeds. As the TDNAA provisions regarding construction make clear, such inapplicability should not render ineffective any existing rights to transfer life insurance proceeds. Therefore, other applicable law regarding the transfer of those proceeds may create the right to direct distribution by will. We thus look

---

[3] As with RCW 11.11.010, our legislature amended RCW 11.02.005 in 2014. Again, the amendments are not relevant here.

instead to the case law to determine whether Collister was authorized to direct the distribution of life insurance proceeds in her will.

## II. ABILITY TO DEVISE LIFE INSURANCE PROCEEDS

Donna and Gupta argue that case law authorizes a testator to establish in her will a testamentary trust for the purpose of distributing life insurance proceeds payable to her personal representative. We agree, but only where the evidence shows that the policy is payable to the personal representative in his *representative* capacity.

Washington appellate courts have twice addressed whether life insurance proceeds may form the corpus of a testamentary trust. In 1956, our Supreme Court examined a statement in a will explaining that the proceeds of a life insurance policy were intended to be used to pay the testator's debts. *In re Milton's Estate*, 48 Wn.2d 389, 390, 294 P.2d 412 (1956). The court noted that life insurance proceeds were normally exempt from claims by the testator's creditors, but could be appropriated to the payment of debts "by clear and apt language" in a will. *Id*. at 392; *see also German-Am. State Bank of Ritzville v. Godman*, 83 Wash. 231, 238, 145 P. 221 (1915). The appellant argued that the testator intended the beneficiary of the life insurance proceeds to hold those proceeds in trust for the payment of debts. *Id*.

The court disagreed, holding that the will did not provide for such a trust by clear and apt language positively directing the beneficiary to use the money to pay those debts. *Milton's*, 48 Wn.2d at 393. The court indicated that a testator would likely need to communicate to a life insurance beneficiary his desire to establish a testamentary trust over the proceeds. *Id*. at 392. However, because the court resolved the case on interpretive grounds, it did not reach a holding on the issue. *Id*. at 394 ("[W]e do not need to decide whether, under the circumstances of this case (no communication to the beneficiary by the insured during his lifetime as to his desires and

intentions), a positive direction in the will as to such distribution would be effective."). The court concluded only that the beneficiary's "right to the proceeds of the insurance policy does not come from the will and the will does not purport to make his right to the proceeds contingent upon his payment of the obligations of the estate." *Id*. at 394.

In 2004, Division One of our court looked to *Milton* when deciding *Woodard v. Gramlow*, 123 Wn. App. 522, 95 P.3d 1244 (2004). In *Woodard*, the testator's will included directions to her executor that created a testamentary trust with the proceeds of a life insurance policy as the trust corpus. *Id*. at 527. The beneficiary of the insurance policy drafted the will and therefore was presumably aware of its provisions. *Id* at 527-28. Division One noted that under *Milton* "exempt property, such as insurance proceeds, [may] pay the debts of the estate as long as the testator's intent to do so is clear in the language of the will or trust." *Id*. at 529. It held that this allowed the testator to establish a testamentary trust using the proceeds of the life insurance policy for the payment of the estate's debts.

Feller asks us to read *Milton* and *Woodard* narrowly. Under his reading, those cases held only that a testator may, by clear and specific language in her will, direct a beneficiary of assets otherwise exempt from creditors' claims to pay the debts of the estate or impose a testamentary trust on such exempt assets for the payment of those debts. *See Milton*, 48 Wn.2d at 392; *Woodard*, 123 Wn. App. at 529. As Feller points out, both cases involved attempts by a testator to use life insurance proceeds to pay specified debts of the estate. *See Milton*, 48 Wn.2d at 390; *Woodard*, 123 Wn. App. at 529. In neither case did the court examine whether a testator could direct the distribution of the proceeds of a life insurance policy to those who were not creditors of the estate. *See Milton*, 48 Wn.2d at 394; *Woodard*, 123 Wn. App. at 529. Feller asks us to

7

avoid extending the principles of *Milton* and *Woodard* to such a fact pattern, which this case presents.

We agree that neither *Milton* nor *Woodard* addressed the particular issue presented by this appeal. However, we read those cases in light of other relevant case law to stand for the proposition that a testator may by will appropriate the proceeds of her life insurance policy as long as (1) the testator uses clear and apt language in the will to direct the appropriation, and (2) the testator, her estate, or her personal representative in that capacity is the beneficiary of the policy.

Feller argued below that *Milton* and *Woodard* created a limited exception to a general rule that a testator may not dispose of life insurance proceeds via a will because those proceeds are paid according to a separate contract with the insurance company. In fact, though, the case law presents a different general rule. In *German-American Bank of Ritzville*, a case cited in *Milton*, our Supreme Court held that a testator may, by clear and apt language, bequeath the proceeds of life insurance policies payable to the insured, the estate, or the executor of the estate. 83 Wash. at 235-36, 241. In this context, *Milton* and *Woodard* should be read as holding that a testator may similarly establish a testamentary trust using such proceeds payable to an executor or personal representative. A testator may by clear and apt language in a will utilize this process to direct distribution of the proceeds of a life insurance policy payable to her personal representative, as long as the policy is payable to that person in his capacity as personal representative of the testator.

### III. FELLER'S CAPACITY AS PERSONAL REPRESENTATIVE

Because Collister was authorized under *Milton* and *Woodard* to direct her personal representative to distribute the proceeds of her life insurance policies payable to that personal

8

representative according to the provisions of her will, we must decide (1) whether those provisions direct that distribution by clear and apt language, and (2) whether the $25,000 policy was payable to Feller in his capacity as Collister's personal representative. We hold that while the direction regarding distribution is clear, the evidence does not show that the $25,000 policy was payable to Feller in his capacity as personal representative.

1.      Clear and Apt Language Establishing a Trust

The language of Collister's will appears to properly establish a testamentary trust over the proceeds of two different life insurance policies, to be distributed according to the will's provisions by his or her personal representative.

There are four elements required to create a testamentary trust: (1) a will evidencing testamentary intent to create a trust, (2) designation of the trust corpus, (3) designation of beneficiaries, and (4) specification of the terms of the trust. *Edwards v. Edwards*, 1 Wn. App. 67, 72, 459 P.2d 422 (1969); *see also In re MacAdams' Estate*, 45 Wn.2d 527, 530, 276 P.2d 729 (1954). These elements must be established by "a clear manifestation of an intent to create a trust and not to do something else." *In re Brooks' Estate*, 20 Wn. App. 311, 313, 579 P.2d 1351 (1978). This requires the testator to include in the will "an imperative command to dispose of the property for the benefit of another." *Id*. "[I]f the grantee has discretion to use the property for herself the court will not find a trust." *Id*.

*Milton* and *Woodard* illustrate what sort of "imperative command" is necessary. The will in *Milton* seemingly instructed the policy beneficiary, who was also the residuary legatee, to use the life insurance proceeds to pay the testator's final expenses:

> The above residuary legacy is given in contemplation and on the condition that the residuary legatee . . . will pay all expenses of the last illness, funeral expenses, and costs of administration and other debts of my estate. . . . It is *contemplated* that the funds for the purpose of paying the above indebtednesses will

be derived from the proceeds of my life insurance as to which the residuary legatee is beneficiary.

48 Wn.2d at 390 (alteration in original). However, the court held that this did not establish a testamentary trust because the language regarding the use of the life insurance proceeds was merely precatory. *Id*. at 393. Whereas the residuary bequest was made "in contemplation and on the condition" that the proceeds be used to pay the debts, the beneficiary's "right to the proceeds of the insurance policy does not come from the will and the will does not purport to make his right to the proceeds contingent upon his payment of the obligations of the estate." *Id*. at 394.

In contrast, the will in *Woodard* "specifically required the [beneficiary to use the] life insurance proceeds to pay '[a]ll just debts, funeral expenses and expenses of last illness.'" *Woodard*, 123 Wn. App. at 529. The court held that this provision established a testamentary trust for the payment of those debts, with the life insurance proceeds as its corpus.

Collister's will, like the will in *Woodard*, provides clear direction regarding the distribution of the life insurance proceeds:

Having in mind that I have certain life insurance policies, one in the amount of $25,000.00 and one in the amount of $60,000.00, *I give, devise and bequeath the proceeds* of said insurance as follows:

A. The $ 25,000.00 policy proceeds *shall go* unto BARBARA GUPTA and DONNA COLLISTER, share and share alike. In the event either should predecease me, then her share *shall go* unto ROCKY FELLER.

CP at 4 (emphasis added). This language is not merely precatory; it clearly directs that the proceeds of the $25,000 policy are to be distributed to Donna and Gupta, and that it is to be distributed to Feller in part if either Donna or Gupta predeceased Collister, and in full only if both Donna and Gupta predeceased Collister. This structure indicates that Collister believed the life insurance proceeds would be part of her estate, to be distributed by her personal representative. Because Feller, Collister's preferred personal representative, was entitled to the

proceeds under the insurance contract, it appears Collister intended that he act as a trustee and distribute those proceeds according to her will. If the proceeds were in fact subject to distribution as part of her estate, her will properly establishes a testamentary trust over them in favor of Donna and Gupta, or in their absence, Feller.

2.     <u>Policy Payable to Personal Representative</u>

We conclude, however, that the life insurance proceeds were not subject to distribution as part of Collister's estate, because she did not name Feller as beneficiary in his capacity as her personal representative.

Collister's will appointed Feller as Collister's personal representative. However, the insurance policy does not indicate that it is payable to Feller only in his capacity as Collister's personal representative—in fact, it clearly lists his relationship to Collister as "friend." CP at 19. The policy predates execution of Collister's will by nearly four years, yet the will does not direct him by name to distribute the proceeds. Nothing in the record indicates that Collister ever informed Feller that he was to benefit only in his capacity as personal representative. In addition, neither the will nor the policy documents condition Feller's acceptance of the insurance proceeds on his ability and willingness to accept the role of personal representative. The record therefore reflects that the policy was payable to Feller individually, not as Collister's personal representative.[4]

*Woodard* provides a useful counter example. In that case, the beneficiary of the life insurance policy drafted the testator's will and in that will appointed herself executor of the

---

[4] The will specifically names Feller as a potential legatee of the proceeds. This indicates that Collister *believed* Feller was not the beneficiary of the policy in his personal capacity. She may have intended to change the beneficiary designation to reflect that belief, but the record shows neither that she did so nor that she attempted to do so.

estate. 123 Wn. App. at 525. The directive in the will was titled, "Instructions to my executor: Jacqueline B. Gramlow." *Id.* at 526. The will specifically directed Gramlow as executor to use the proceeds of the policy to pay the debts of the estate. *See id.* at 529. Thus, the language of the will indicated that the testator's policy was payable to Gramlow only in her capacity as executor subject to the will's directive, not in her personal capacity. *See id.* Gramlow's acceptance of the proceeds was made contingent upon her payment of the estate's debts, so the proceeds formed the corpus of a testamentary trust. *Cf. Milton*, 48 Wn.2d at 394.

Collister's will lacks such indications of intent to designate Feller as beneficiary of the $25,000 policy in his capacity as personal representative. Instead, for the reasons just given, the record indicates that the policy was payable to Feller individually, not as Collister's personal representative.

Collister's will fails to establish the corpus of a testamentary trust because it attempts to use the proceeds of a life insurance policy payable to Feller in his personal capacity. Therefore, Feller is entitled to the proceeds of the policy as the lawful beneficiary.

## IV. ATTORNEY FEES

Both parties request an award for reasonable attorney fees on appeal. We decline to award attorney fees to either party.

We will award attorney fees to a party entitled by law to such an award on appeal. RAP 18.1. As both parties acknowledge, RCW 11.96A.150 gives an appellate court reviewing a probate matter discretion to award attorney fees and costs on appeal to "any party," to be paid by any party or from the estate. Although we resolve this case in Feller's favor, we reject Feller's interpretation of the TDNAA and credit Donna's and Gupta's argument in part. Therefore, we decline to award Feller reasonable attorney fees.

## CONCLUSION

Because the life insurance policy was payable to Feller in his personal capacity, Collister was not authorized to direct distribution of the proceeds via will. We reverse the trial court's order and remand for proceedings consistent with this opinion.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
MAXA, J.

_____
SUTTON, J.