# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>SANDRA L. WESTALL,<br><br><br>                        Deceased. | No. 50708-1-II<br><br>PUBLISHED OPINION |

MAXA, C.J. – Paul Westall, as personal representative of the community property portion of his deceased wife Sandra Westall's estate, appeals the superior court's order (1) denying his motion to sell to himself the one-half interest in certain real property in Gig Harbor that Sandra[1] bequeathed to a special needs trust for their daughter Destiny Westall, and (2) appointing a third party to engage a real estate broker to list the entire property for sale.

The property at issue was Paul and Sandra's community property. Following Sandra's death, Paul retained ownership of a one-half interest in the property and the other one-half interest was part of Sandra's estate that she bequeathed to the trust. Paul made offers to purchase the estate's one-half interest, but the trustee rejected those offers. Paul believed that he had the authority to sell the property to himself without court approval because he was a personal representative with nonintervention powers. But he filed a motion with the superior court to approve the sale. The court denied the motion and directed that the entire property be listed for

---

[1] To avoid confusion we refer to Sandra, Paul, and Destiny Westall by their first names. No disrespect is intended.

sale in an attempt to determine the property's fair market value, although the court did not order the sale of the property.

We hold that (1) the superior court did not err by denying Paul's motion to approve the sale of the estate's one-half interest in the Gig Harbor property to himself despite his nonintervention powers because Paul invoked the superior court's jurisdiction regarding the sale and there was uncertainty regarding the property's fair market value, and (2) the superior court had authority to order that the entire property be listed for sale.

Accordingly, we affirm the superior court's order denying Paul's motion to approve the sale of the estate's one-half interest in the Gig Harbor property to himself and appointing a third party to list the property for sale.

FACTS

*Sandra's Will and Grant of Nonintervention Powers*

Sandra died in March 2015 and her will was admitted to probate. Sandra was survived by her husband Paul and their daughter Destiny. Destiny has a mild developmental delay and some significant medical problems.

Sandra's will established a special needs trust to provide for Destiny's care and named Sandra's brother, Bill Peacher, as the trustee. The will bequeathed Sandra's interest in all community property to the special needs trust.

Sandra's will appointed Peacher as the personal representative of the estate, to act without intervention of any court. However, as the surviving spouse, Paul had the right under RCW 11.28.030 to serve as the personal representative of the community property portion of Sandra's estate.

In May, Paul and Peacher jointly petitioned the trial court to appoint them as personal representatives with nonintervention powers. The superior court appointed Paul as personal representative of the estate with respect to Sandra's community property with nonintervention authority to administer that property without further court intervention. The court appointed Peacher as personal representative with respect to Sandra's separate property, also with nonintervention authority. The court also found that the estate was solvent.

In June, Peacher petitioned the court to appoint a litigation guardian ad litem (LGAL) to protect Destiny's interests in the administration of the estate. The court entered an agreed order appointing an LGAL.

*Property Value and Offers to Purchase*

One item of community property was a 2,180 square foot building in downtown Gig Harbor. There was a retail hair salon on the main floor of the building and a living area on the upper floor. Paul lived in the building after Sandra's death. The building has a view of the harbor.

In October 2016, the LGAL obtained a comparative market analysis of the Gig Harbor property from Julia Runyan, who estimated the property's fair market value at up to $720,000. Runyan believed that the property could accommodate a number of residential or commercial uses and referred to the property as "spectacular and desirable." Clerk's Papers (CP) at 80. Runyan later provided an updated analysis stating the value at $820,000 to $900,000.

In February 2017, Peacher on behalf of the trust offered to purchase Paul's one-half interest in the property based on a property value of $760,000. Paul declined that offer. But Paul then offered to purchase the trust's one-half interest of the property for an amount not disclosed in the record. Peacher declined that offer.

3

In March, the LGAL filed a petition with the superior court making various requests, including that the court authorize her to list the Gig Harbor property for sale and to sell the property. Paul subsequently filed a formal offer with the court to purchase the trust's interest in the property for $380,000 less certain offsets. A few days later, the court entered an agreed order stating that the parties would continue to negotiate regarding the property and that the trust would obtain and pay for an appraisal of the property.

In June, the trust obtained an appraisal of the Gig Harbor property from Barbara Montro, who estimated the property's fair market value at $700,000 as of May 2017. Montro believed that the best and highest use was redevelopment as two single-family sites. In July, Paul filed another formal offer with the court to purchase the trust's interest for $350,000 less certain offsets. Paul apparently received no response.

*Motion to Sell Property*

In July 2017, Paul filed a motion for an order approving the sale of the estate's one-half interest in the property. He asserted that as personal representative with nonintervention powers over the administration of the community property he had authority to sell the property, but he nevertheless was seeking court approval to avoid the impression that he had a conflict of interest.

The trust filed a response in which it requested that the superior court order that the property be listed for sale to receive offers and determine the actual fair market value. The trust believed that the property had a greater market value than reflected in the appraisals. The LGAL joined in that request.

In support of its position, the trust submitted the declaration of real estate broker Ray Velkers. Velkers stated that he had listed the property at Paul's request in 2014 for $1,995,000, which he believed was too high. However, he thought that "there are very good prospects of a

4

sale at somewhere around $1.3 million." CP at 491. Velkers stated that a prospective purchaser would have to consult with the city of Gig Harbor to see if a development like a restaurant would be allowed on the property, but he thought that it was very likely that the city would agree to a restaurant on the property.

Velkers concluded:

The view from that property is spectacular, which is why I had so many interested prospects when the property was listed back in 2014. I am aware that the property has been recently appraised at $700,000, but it is my opinion that if the property were listed at, say $1.35 million, we would be able to find a buyer who could convince the City of Gig Harbor that development of that property with a restaurant or other use would be beneficial to the City and in keeping with the intent of the City's zoning.

CP at 491.

The trust also submitted a letter from Montro in which she explained that her $700,000 appraisal was based on the current zoning, which would allow only 50 percent of the property to be redeveloped and would limit restaurant use to 800 square feet.

The superior court held a hearing on Paul's motion and stated in its oral ruling that it was appropriate to test the market given the unique nature of the property. Accordingly, the court entered an order denying Paul's motion to approve a sale and appointing an attorney to list the property for sale and bring offers to the attention of the parties. The order stated that no offer could be accepted without court approval.

Paul appeals the trial court's order.[2]

---

[2] The superior court included in its order an express statement that the order was final for the purposes of CR 54(b) and that there was no just reason for delay. However, the parties do not raise the issue of appealability and therefore we do not address that issue.

ANALYSIS

A.    DENIAL OF MOTION TO APPROVE SALE

Paul argues that the superior court erred by denying his motion to approve the sale of the estate's one-half interest in the Gig Harbor property to himself because (1) he had full authority to administer the community property portion of the estate as a personal representative with nonintervention powers and the court had no authority to interfere, and (2) approval of the sale was in the estate's best interest. We disagree.

1.    Superior Court's Authority

Paul argues that the superior court did not have authority to deny his motion to approve the sale of the estate's one-half interest in the Gig Harbor property to himself. We disagree.

The superior court granted Paul nonintervention powers as personal representative of the community property portion of Sandra's estate and declared that the estate was solvent. Paul relies on RCW 11.68.090(1), which states:

> [A] personal representative acting under nonintervention powers may . . . sell, exchange, convey, and otherwise have the same powers, and be subject to the same limitations of liability, that a trustee has under chapters 11.98, 11.100, and 11.102 RCW with regard to the assets of the estate, both real and personal, all without an order of court and without notice, approval, or confirmation, and in all other respects administer and settle the estate of the decedent *without intervention of court*.

(Emphasis added.)

In general, a superior court has very limited authority[3] to intervene in the administration of a nonintervention estate once the court declares the estate solvent. *In re Estate of Rathbone*,

---

[3] Some cases refer to the superior court's "jurisdiction" when discussing nonintervention estates. *E.g.*, *In re Estate of Jones*, 152 Wn.2d 1, 9, 93 P.3d 147 (2004). But as the Supreme Court recently noted, the actual question involves the superior court's statutory *authority* and in this context "jurisdiction" and "authority" are synonymous. *In re Estate of Rathbone*, 190 Wn.2d 332, 339 n.4, 412 P.3d 1283 (2018).

190 Wn.2d 332, 339, 412 P.3d 1283 (2018). However, the court can regain authority if the personal representative or another person with statutorily conferred authority properly invokes that authority. *Id.*

Here, in his motion to approve the sale, Paul expressly invoked the superior court's authority under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. He quoted from RCW 11.96A.020, which grants courts full authority to "administer and settle all matters concerning the estates of . . . deceased persons." *See* CP at 389. Paul emphasized that it was "time for the Court to intervene." CP at 389. Further, at oral argument of the motion Paul stated that "it is within the Court's jurisdiction to enter an order approving a sale of the community's interest to Paul." Report of Proceedings (July 28, 2017) at 19.

We hold that because Paul expressly invoked the superior court's authority, the court had authority to approve or deny approval for Paul's proposed sale of the estate's one-half interest in the Gig Harbor property to himself.

2. Merits of Motion

Paul argues that even if the superior court had authority to decide whether or not to approve the proposed sale of the estate's one-half interest in the Gig Harbor property to himself, the trial court erred in denying the motion. We disagree.

a. Authority to Sell Property Bequeathed to Third Person

Initially, the trust argues that Paul did not have authority to sell the one-half interest in the property that had been bequeathed to the trust. We disagree.

RCW 11.48.020 grants a personal representative the right to immediate possession of all real and personal property of the deceased. And as noted above, RCW 11.68.090(1) authorizes a personal representative to sell the estate's assets. RCW 11.68.090(1) also states that a party to

such a sale is entitled to a conclusive presumption that the transaction is necessary for the administration of the estate. In addition, RCW 11.98.070(15)[4] gives a trustee (and therefore a personal representative who has a trustee's powers under RCW 11.68.090(1)) the right to "[s]elect any part of the trust estate in satisfaction of any partition or distribution, in kind, in money, or both."

The trust relies on RCW 11.04.250, which states that when a person dies owning real property, "his or her title shall vest immediately in his or her heirs or devisees, subject to his or her debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws." The trust argues that a personal representative can sell bequeathed property only to satisfy those enumerated estate obligations. Because there are more than enough assets in the estate to cover all debts and expenses, the trust claims that there is no statutory basis for Paul to sell the property to himself.

We hold that RCW 11.68.090(1) controls, not RCW 11.04.250. RCW 11.68.090(1) grants a personal representative with nonintervention powers broad authority to sell estate property in the administration of the estate, and there is no stated exception for property bequeathed to a third person. Further, the term "subject to" in RCW 11.04.250 means that the value of a bequest can be reduced to pay estate obligations. RCW 11.04.250 does not state that estate property can be sold *only* to pay those estate obligations.

No cases specifically address a personal representative's authority to sell property bequeathed to a third party or the relationship between RCW 11.68.090(1) and RCW 11.04.250 in this context. But the Supreme Court confirmed in *In re Estate of Jones* that until the estate

---

[4] RCW 11.98.070 has been amended since the events of this appeal transpired. However, these amendments do not materially affect the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 11.98.070.

closes, (1) "the heirs may not treat estate real property as their own" and (2) "[a]n executor is entitled to possess and control estate property during the administration of the estate and has a right to it even against other heirs." 152 Wn.2d 1, 9, 93 P.3d 97 (2004). These statements support a personal representative's ability to sell estate property despite the existence of other heirs.

We hold that Paul had authority, *with court approval*, to sell the estate's one-half interest in the Gig Harbor property even though that interest had been bequeathed to the trust.

b. Personal Representative's Duty of Loyalty

The trust also argues that Paul did not have authority to sell the estate's one-half interest in the Gig Harbor property to himself because the sale would have breached his fiduciary obligations and represented an impermissible conflict between his personal interests and the estate's interests.[5] We hold that a finding that a sale would implicate a personal representative's fiduciary duties is a factor that a superior court can consider in deciding whether to approve the sale, but such a finding does not necessarily preclude the personal representative from making such a sale *with court approval*.

RCW 11.68.090(1) authorizes a personal representative with nonintervention powers to sell estate assets, but the statute also states that the personal representative shall "otherwise have the same powers, and be subject to the same limitations of liability, that a trustee has under chapters 11.98, 11.100, and 11.102 RCW." This language suggests that a personal representative's broad authority to sell estate property is limited by the provisions of the enumerated RCW chapters.

---

[5] Here, the superior court did not rely on Paul's fiduciary duties in denying his motion to approve the sale. Therefore, it appears that the trust is arguing that Paul had no authority as a matter of law to sell the property to himself because of his fiduciary obligations.

The trust focuses on RCW 11.98.078, which outlines a trustee's duty of loyalty. Under RCW 11.98.078(1), a trustee has a duty of loyalty to the beneficiaries of the trust and must administer the trust solely in the interests of the beneficiaries. RCW 11.98.078(2) states that a sale of trust property "for the trustee's own personal account or . . . otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction" unless one of several exceptions (including court approval) applies. RCW 11.98.078(8) provides that if the trust has two or more beneficiaries, the trustee "must act impartially in administering the trust . . . , giving due regard to the beneficiaries' respective interests."

The Supreme Court in *Jones* emphasized that a personal representative has ethical and fiduciary duties to the estate:

> The ethical standards for personal representatives remain the same, regardless of whether the representative performs his or her duties under court supervision. All personal representatives act in identical fiduciary capacities and must refrain from self-dealing, administer the estate solely in the interest of the beneficiaries, and uphold their duty of loyalty to the beneficiaries.

152 Wn.2d at 21.

The typical remedy for a personal representative's breach of his or her fiduciary duties is to remove or restrict the powers of the personal representative under RCW 11.68.070 and RCW 11.28.250. *See Jones*, 152 Wn.2d at 9-10. RCW 11.68.070 states:

> [U]pon petition of any unpaid creditor of the estate who has filed a claim or any heir, devisee, legatee, or of any person on behalf of any incompetent heir, devisee, or legatee, . . . if, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed.

But RCW 11.68.070 is inapplicable in this appeal because at the time of the court's order, the trust had not filed a petition to remove Paul or to restrict Paul's powers.

A superior court reasonably could consider whether a sale of estate property would violate a personal representative's fiduciary duties in deciding whether to approve a sale. But the violation of those duties necessarily would depend on the reasonableness of the sale. If the sale was for the full market value of the property, there presumably would be no breach of duty under RCW 11.98.078(1) or (8). And even a sale for the personal representative's account can be valid if approved by the court under RCW 11.98.078(2)(b). Therefore, the fact that Paul proposed selling the property to himself did not necessarily preclude the superior court from approving the sale.

### c. Estate's Best Interest

Paul argues that the superior court erred in not approving the sale of the estate's one-half interest in the Gig Harbor property to himself because the sale was in the estate's best interest. We disagree.

The general rule is that probate proceedings represent an exercise of the trial court's equitable powers, which we review de novo. *In re Estate of Collister*, 195 Wn. App. 371, 374, 382 P.3d 37 (2016). We apply that standard to the superior court's denial of Paul's motion to approve the sale.[6]

---

[6] There is some support for applying an abuse of discretion standard for a superior court's decisions regarding the sale of property. *In re Estate of Scholes*, 49 Wn.2d 325, 326, 301 P.2d 172 (1956) (stating that whether the superior court should confirm a sale of property in probate proceedings is vested in the court's sound judicial discretion). Because both parties agree that we should apply de novo review of the superior court's denial of Paul's motion, we do not address whether an abuse of discretion standard is appropriate here.

Paul argues that approval of the sale of the estate's one-half interest in the Gig Harbor property to himself was in the estate's best interest because (1) everyone agreed that it is in the trust's interest that the property be sold and the cash distributed to the trust, (2) Paul's offers to purchase the property were based on market values obtained by the LGAL and the trustee, (3) Paul has offered to give the trust an additional distribution if he sells the property for an amount higher than the purchase price in the next five years, and (4) there is benefit in closing the estate and eliminating further administrative costs.

However, the key question here is the true market value of the Gig Harbor property. The appraisals indicated that the property's fair market value was in the range of $700,000 to $900,000. Velkers believed that there were very good prospects for a sale around $1.3 million if the city would approve use of the property for a restaurant or other development.

Given the uncertainty regarding the property's value, it was reasonable for the superior court to deny Paul's motion to approve the sale. Paul's last offer for the estate's one-half interest in the property was $350,000, which is lower than would be indicated by the highest appraisal value of $900,000 and significantly lower than Velkers' opinion regarding market value.

We hold that the superior court did not err in denying Paul's motion to approve the sale of the estate's one-half interest in the Gig harbor property to himself.

B.      ORDER DIRECTING THAT THE PROPERTY BE LISTED FOR SALE

Paul argues that the trial court erred by ordering that the entire Gig Harbor property be listed for sale because (1) the court lacked jurisdiction over his personal one-half interest in the property and (2) the court had no authority to order a listing of the property without a filed petition seeking approval of a sale. We disagree.

12

1.    Superior Court Authority

Paul argues that the superior court had no legal basis for ordering that the entire Gig Harbor property, including the one-half interest that he owns, be listed for sale. He relies on RCW 11.02.070, which states that upon one spouse's death, a one-half share of community property shall be confirmed in the surviving spouse. Paul claims that his one-half interest is not subject to estate administration.

However, RCW 11.02.070 also states, "The whole of the community property shall be subject to probate administration for *all purposes of this title*, including the payment of obligations and debts of the community, the award in lieu of homestead, the allowance for family support, and any other matter for which the community property would be responsible or liable if the decedent were living." (Emphasis added.) Although listing estate property for sale to determine its market value does not fall within any of the enumerated purposes, determining the value of estate property certainly is a purpose of title 11 RCW. Therefore, Paul's one-half interest in the Gig Harbor property was subject to estate administration.

Further, RCW 11.96A.020(1)(a) gives the court "full and ample power and authority under this title to administer and settle . . . [a]ll matters concerning the estates and assets of . . . deceased persons." And RCW 11.96A.020(2) states,

> If this title should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of the matters listed in subsection (1) of this section, the court nevertheless has full power and authority to proceed with such administration and settlement *in any manner and way that to the court seems right and proper*.

(Emphasis added.) Once Paul invoked the superior court's authority, the court had broad authority to administer all matters concerning the estate's assets.

We hold that the superior court had authority to order that the entire Gig Harbor property, including the one-half interest that Paul owns, be listed for sale.[7]

2.    Need for a Petition

Paul also argues that the trial court did not have authority to order that property be listed for sale without a petition invoking the court's jurisdiction.  He relies on RCW 11.56.005, which references a petition.

However, RCW 11.56.005 governs the *exchange* of property.  RCW 11.56.030, which authorizes the superior court to order the sale of real property, states that "the court may, if it see fit, order such sale, lease or mortgage *without any petition* having been previously presented." (Emphasis added.)

Paul makes a vague reference to the rule that a superior court has no authority when the personal representative has nonintervention powers unless that authority is invoked.  But he does not explain why his motion for court approval of the proposed sale of the trust's one-half interest in the Gig Harbor property did not invoke the superior court's authority.

We hold that the absence of a petition requesting the superior court to list the property for sale did not preclude the court from ordering that the property be listed for sale.

C.    ATTORNEY FEES ON APPEAL

All parties request that this court award attorney fees on appeal under RCW 11.96A.150(1).  Paul requests attorney fees assessed against the estate.  The trust requests attorney fees from Paul.  And the LGAL requests attorney fees from Paul to reimburse the estate.

---

[7] We do not address whether the superior court had the authority to actually order the sale of Paul's one-half interest in the property.  This issue is not presented in this appeal because the court did not order the sale, just the listing for sale.

Under RAP 18.1, a party may recover attorney fees on appeal if allowed under the applicable law. RCW 11.96A.150(1) states that the appellate court may, in its discretion, order attorney fees to be awarded to any party from any other party, the estate assets, or nonprobate assets "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1) further states, "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." This statute does not require that a party substantially prevail in order to recover attorney fees. *In re Estate of Mower*, 193 Wn. App. 706, 728, 374 P.3d 180, *review denied*, 186 wn.2d 1031 (2016).

This case involves a bona fide dispute between the parties regarding the proposed sale. The superior court's guidance was required, and it was not inappropriate for Paul to appeal the superior court's determination. Therefore, we do not impose attorney fees on any party.

CONCLUSION

We affirm the trial court's order denying Paul's motion to approve the sale of the estate's one-half interest in the Gig Harbor property to himself and appointing a third party to list the property for sale.

_____
MAXA, C.J.

We concur:

_____
SUTTON, J.

_____
LANESE, J. PRO TEM