IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CAROL HENDERSON, Special Administrator of the Estate of Norman Henderson, | No. 85156-0-I |
| Respondent/Cross-Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PAM SCHMOLL, Special Administrator of the Estate of Jane C. Henderson, and CAROLYN LEVY, | |
| Appellants/Cross-Respondents. | |

SMITH, C.J. — Edith Henderson executed her will in December 1982 and died the following year, survived by her two children: Norman Henderson and Jane Henderson. Edith[1] bequeathed her home to Jane, provided that when Jane sold the property "in her discretion," half of the proceeds would be paid out to Norman. Norman died in June 2018. His wife, Carol Henderson was appointed as the Special Administrator of his estate. Jane died in June 2021, without having sold the home. She appointed Pam Schmoll as personal representative of her estate. Jane's will conditioned Norman's entitlement to half of the proceeds from the sale of the home upon his surviving Jane.

---

[1] For clarity, we refer to the Henderson family members by their first name.

Following Jane's death, Carol filed a creditor's claim against Jane's estate, asserting Norman's estate's right to half of the proceeds following the sale of the property. Schmoll rejected the claim. Carol then initiated a complaint on the rejection of the creditor's claim. Schmoll moved for summary judgment, which the trial court granted in part, reserving dismissal pending Carol's motion to amend the complaint.

Carol's amended complaint again challenged the rejected creditor's claim, but now on the basis of an express trust. All parties again moved for summary judgment. The trial court granted summary judgment in Carol's favor, finding an express trust exists. Schmoll appeals, arguing that Edith's bequest to Norman violates the rule against perpetuities, that Edith's will did not create an express trust, and that the deed that conveyed the property was not a valid testamentary instrument. Carol submitted a conditional cross-appeal in the event that we reverse the determination that Edith's will created an express trust, arguing that the bequest did not violate the rule against perpetuities and that unjust enrichment supports imposing a constructive trust. She also requests fees on appeal. Because Edith's will created an express trust exempt from the rule against perpetuities and the deed need not be a testamentary instrument to convey the property, we affirm. We decline to award attorney fees.

FACTS

Background

Edith executed her will in December 1982. She died the following year and was survived by her two children: Norman and Jane. Edith's will was

2

admitted to probate in King County in December 1983. At the time of her death, Edith's major asset was her Bellevue home (the property).[2] Paragraph C(2) of Article Fourth of Edith's will directed that half of the net proceeds of the property go to Norman, subject to the provisions of the following paragraph. That next paragraph provided:

> D. To my daughter, JANE CHRISTINE HENDERSON, all the rest, residue and remainder of my estate, provided, however, that when my residential property at 9804 N.E. 22nd Bellevue, Washington is sold by my daughter, in her discretion since she receives the legal title, one-half (1/2) of the net proceeds of the sale (of the real estate only) shall be paid to my son, NORMAN DAVID HENDERSON, it being my intent that, except as provided in paragraph c(1) above, my daughter shall have all of my personal property, but that my daughter and son share equally in the net proceeds of the real estate sale.

Following Edith's death, the property was conveyed to Jane by deed, again subject to Norman's right to half of the net proceeds when ultimately sold.

Norman died in June 2018. His wife, Carol, was appointed as the special administrator of his estate. Jane died in June 2021, without having sold the property. Jane's will was admitted to probate in King County in August 2021, naming Carolyn Levy as the primary beneficiary of her estate, and conditioning Norman's entitlement to half the proceeds of the property upon his surviving Jane. Pam Schmoll, a close friend, was appointed personal representative of Jane's estate.

---

[2] Although the property was listed in Bellevue at the time of Edith's death, the neighborhood has since been changed to Clyde Hill, Washington.

## Creditor's Claim

Following Jane's death, Carol, in her role as the special administrator of Norman's estate, filed a creditor's claim asserting Norman's right to half the sale proceeds of the property. Carol argued, given that Edith's will provided that her children were to share in the proceeds of the sale, Jane held a one-half interest to the title of the real property in constructive trust for Norman. Schmoll rejected the creditor's claim.

## Initial Complaint

In March 2022, Carol initiated a complaint on the rejected creditor's claim. The complaint again stated that Norman's estate was entitled to half of the proceeds from the sale of the property because Jane held half of the real property in constructive trust for Norman. The complaint did not raise a claim for unjust enrichment or express trust.

Levy, as the primary beneficiary of Jane's estate, moved to intervene, which the court granted. In August 2022, both Schmoll and Levy independently moved for summary judgment. Four days before oral argument on the summary judgment motions, Carol moved to amend her complaint to add a claim.

Following oral argument in September 2022, the court granted Levy's motion for summary judgment, ruling that no basis existed on which to award equitable relief and that because Norman's interest in the sale proceeds was a future interest that did not vest, it was void for violating the rule against perpetuities. The court specifically reserved dismissal of the entire complaint, however, pending Carol's motion to amend.

4

Carol moved for reconsideration, which the court denied.

Amended Complaint

Carol initiated an amended complaint in October 2022, now asserting that Jane held half of the real property in express trust for Norman and arguing unjust enrichment. All parties moved for summary judgment.

In February 2023, the court, via a different judge, granted Carol's motion for summary judgment, ruling that Edith's will created an express trust and, as a result, did not violate the rule against perpetuities. The court dismissed the theory of unjust enrichment. Schmoll and Levy jointly moved for reconsideration, which was denied.

Schmoll and Levy appeal.[3]

ANALYSIS

Standard of Review

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. In re Gilbert Miller Testamentary Credit Shelter Tr. & Est. of Miller, 13 Wn. App. 2d 99, 103-04, 462 P.3d 878 (2020). Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists "if reasonable minds could

---

[3] Schmoll and Levy appeal only the second order granting summary judgment. The court addressed all relevant claims in this second order, including those at issue in the first summary judgment.

differ on facts which control the outcome of the proceeding." Ghodsee v. City of Kent, 21 Wn. App. 2d 762, 768, 508 P.3d 193 (2022).

Issue and Claim Preclusion

Schmoll and Levy contend that, given the first summary judgment order, Carol's claim for an express trust is barred by collateral estoppel and res judicata. Carol asserts that there was no final judgment on the merits of a prior suit and therefore no preclusion applies. We agree with Carol.

Collateral estoppel, or issue preclusion, prohibits relitigation of the same issue in a later proceeding if an earlier opportunity to fully and fairly litigate the issue resulted in a final decision on the merits. Cowan v. Cowan, 29 Wn. App. 2d 355, 370, 540 P.3d 158 (2023). The party asserting collateral estoppel must establish four elements: (1) the issue decided in the earlier proceeding is identical to the issue presented in the action in question; (2) the earlier proceeding resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the earlier proceeding; and (4) the application of the doctrine "does not work an injustice on the party against whom it is applied." Cowan, 29 Wn. App. 2d at 370. "For the purposes of collateral estoppel, a final judgment 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' " In re Dependency of H.S., 188 Wn. App. 654, 661, 356 P.3d 202 (2015) (quoting Cunningham v. State, 61 Wn. App. 562, 567, 811 P.2d 225 (1991). When a claim asserted in an amended complaint arises out of the same conduct, transaction, or occurrence set forth in the original complaint, the amendment

6

dates back to the date of the original complaint and does not constitute a prior adjudication.  CR 15(C).

Res judicata, also known as claim preclusion or claim splitting, prohibits relitigation of claims that were or could have been litigated in a prior proceeding. Reeves v. Mason County, 22 Wn. App. 2d 99, 114-15, 509 P.3d 859 (2022).  A claimant may not split a single cause of action and force a defendant to incur the cost and effort of multiple suits.  Reeves, 22 Wn. App. 2d at 115.  For the doctrine to apply, "a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for against whom the claim is made." Id. at 115. The prior judgment must be final.  Id. at 115.  Summary judgment constitutes a final judgment on the merits for the purposes of res judicata. Penner v. Cent. Puget Sound Reg'l Transit Auth., 25 Wn. App. 2d 914, 924, 525 P.3d 1010, review denied, 1 Wn.3d 1026 (2023).

Schmoll and Levy assert that because the parties, issues, and facts are the same and the court's first order for summary judgment dismissed Carol's claim, issue preclusion applies.  Schmoll and Levy's argument fails because there was no prior proceeding, Carol did not fully and fairly litigate the issue of an express trust, and the court did not enter a final judgment on the merits.

To begin, collateral estoppel requires a prior proceeding.  Because Carol's express trust claim arises from the same transaction set forth in her original complaint, her amended complaint dates back to the original complaint and does not constitute a prior adjudication.  Next, Carol did not fully and fairly litigate the

7

issue of an express trust because she did not assert the existence of an express trust in her initial complaint. Without previous litigation, collateral estoppel does not apply. Finally, no final judgment on the merits exists. Schmoll and Levy assert that the first summary judgment order dismissing Carol's claim constitutes a final judgment on the merits. But that order did not, in fact, dismiss Carol's claim. The court specifically provided that "this case will *not* be dismissed at this time in consideration of [Carol's] motion to amend the [complaint]" (Emphasis added.) Because the court did not dismiss the suit, the first summary judgment order was not a final decision on the merits.

Schmoll and Levy also argue that claim preclusion applies because Carol's two claims involve the same evidence and the same rights and interests. Once again their argument fails because the trial court did not enter a final judgment on the merits. Instead, the court reserved dismissing the case until after hearing Carol's amended complaint. Neither issue nor claim preclusion apply.

Rule Against Perpetuities

Schmoll and Levy assert that both Edith's bequest to Norman and the deed that transferred the property interest to Jane violate the rule against perpetuities and are therefore void. Schmoll and Levy also contend that the statutory warranty deed that conveyed the property is invalid as a testamentary document. Carol disagrees, arguing first that Edith's will created an express trust exempt from the rule against perpetuities and next that legal title was transferred by an executor's deed, not a statutory warranty deed. We conclude that Edith's

will created an express trust exempting her bequest to Norman from the rule against perpetuities and that the form of the deed is irrelevant because the deed need not be a testamentary instrument to properly convey the property.

The rule against perpetuities provides that an executory interest will fail if it does not vest within a life or lives in being at the time of the testator's death, plus 21 years. Kennewick Public Hosp. Dist. v. Hawe, 151 Wn. App. 660, 665, 214 P.3d 163 (2009). An executory interest is a future interest that has not vested at the time of its creation. Wash. State Grange v. Brandt, 136 Wn. App. 138, 148, 148 P.3d 1069 (2006). "A right vests when it become[s] fixed and absolute and is no longer dependent on any contingency." Robroy Land Co., Inc. v. Prather, 95 Wn. 2d 66, 69, 622 P.2d 367 (1980). If any possibility exists that the interest may not vest within the time frame of life in being plus 21 years, the interest is void. Betchard v. Iverson, 35 Wn.2d 344, 349, 212 P.2d 783 (1949). The rule against perpetuities governs "in complete disregard . . . of the intention of the testator." Betchard, 35 Wn.2d at 348-49.

But the 1959 Act, codified as RCW 11.98.010-.050 at the time Edith executed her will, provides that no provision of a document creating a trust will be considered invalid under the rule against perpetuities for any of the following periods: (1) 21 years after the effective date of the instrument; (2) the length of a life or lives in being at the effective date of the instrument if the trust is to continue for such life or lives; (3) the length of any portion of life or lives in being if the trust is continue for a portion of such life or lives; and (4) the 21 years following the periods specified in (2) and (3) above. Laws of 1959, ch. 146, § 1.

9

Any property not vested at the end of those specified periods is to be distributed as intended by the trustor. Laws of 1959, ch. 146, § 1.

    1. <u>Express Trust</u>

A trust is "a property interest held by one person. . . at the request of another. . . for the benefit of a third party." BLACK'S LAW DICTIONARY 1817 (11th ed. 2019). One party holds legal title for the benefit of another, who holds equitable title. <u>State ex rel. Wirt v. Superior Court for Spokane County</u>, 10 Wn.2d 362, 369, 116 P.2d 752 (1941). An express trust exists where " 'a person has, or accepts, possession of money, promissory notes, or other personal property with the express or implied understanding that [they are] not to hold it as his own absolute property, but to hold and apply it for certain specified purposes.' " <u>In re Wash. Builders Benefit Tr.</u>, 173 Wn. App. 34, 58, 293 P.3d 1206 (2013) (quoting <u>Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n</u>, 133 Wn. App. 835, 845-46, 138 P.3d 638 (2006)). Generally, the creation of an express trust requires an imperative command to dispose of property for the benefit of another. <u>In re Est. of Brooks</u>, 20 Wn. App. 311, 313, 579 P.2d 1351 (1978). Precatory language is not enough. <u>Brooks</u>, 20 Wn. App. at 313. Language is precatory if it requests, recommends, or expresses a desire rather than commands a result. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1783 (2002).

Two cases outline the elements required to create an express trust: <u>In re Estate of Collister</u>, 195 Wn. App. 371, 382 P.3d 37 (2016), and <u>In re Estate of Curry</u>, 98 Wn. App. 107, 988 P.2d 505 (1999).

Collister sets forth four elements necessary to create an express trust: "(1) a will evidencing testamentary intent to create a trust; (2) designation of the trust corpus; (3) designation of the beneficiaries; and (4) specification of the terms of the trust." 195 Wn. App. at 380-81. All four must be established by a clear manifestation of intent. Collister, 195 Wn. App. at 381.

Curry provides an alternative method, detailing seven factors suggested by the American Law Institute:

> "(1) the imperative or precatory character of the words used; (2) the definiteness or indefiniteness of the property; (3) the definiteness or indefiniteness of the beneficiaries or of the extent of their interests; (4) the relations between the parties; (5) the financial situation of the parties; (6) the motives which may reasonably be supposed to have influenced the settlor in making the disposition; [and] (7) whether the result reached by construing the transaction as a trust or not a trust would be such as a person in the situation of the settlor would naturally desire to produce."

98 Wn. App. at 113-14 (alteration in original) (quoting Restatement (Second) of Trusts § 25 cmt. b (1959)).

Schmoll and Levy assert that Edith did not create an express trust. We disagree because a review of the factors necessary in both Collister and Curry indicate that Edith created an express trust.

Looking first to the Collister factors, all four turn in Carol's favor. First, Edith's will evidences her intent to create a trust by granting Jane only legal title to the property. If Edith wanted Jane to have complete control over the property, she would have granted her more than legal title. Second, the will clearly designates the trust corpus as the property. Third, the will designates Jane and Norman as the beneficiaries, each taking half of the net proceeds of the property

11

sale. And fourth, Edith's will details the parameters of the trust: Jane holds legal title of the property until, not if, she sells it, at which point Norman is entitled to half of the sale proceeds.

In addition, the court in Collister found that a will stating only "I give, devise and bequest the proceeds of" was sufficient to create a testamentary trust, reasoning that the language was not precatory and the intent was clear. 195 Wn. App. at 382. Here, Edith's intent is clear and in stating that half of the net proceeds "shall" be paid to Norman, the language is more than precatory. The Collister factors indicate the creation of an express trust.

Edith's will also satisfies the express trust factors under Curry. First, the character of the word "shall" in Edith's will is imperative and requires, rather than just suggests, that Jane distribute half of the sale proceeds to Norman. As to the second and third factors, both the property and the beneficiaries are clearly definite; the trust property is the property that Edith bequests, while Jane and Norman are the beneficiaries of that property. Fourth, the relation between the parties is similarly clear: they are mother, daughter, and son. The fifth factor does not lean one way or the other because there is no evidence in the record of the financial situation of any of the parties. Sixth, Edith expresses her motive herself, stating that her intent is that Jane and Norman share the proceeds. And seventh, the result reached by construing the transaction as a trust would not be contrary to a settlor's intent when that intent is to split property between beneficiaries.

With six of the seven factors indicating an express trust and the seventh neutral, Edith's will created an express trust under Curry as well.

Schmoll and Levy next argue that even if an express trust exists, the 1959 Act does not exempt the trust from the rule against perpetuities. We again disagree.

The 1959 Act, codified at the time as RCW 11.98.010-.050, was in effect when Edith executed her will. The statue provides that an express trust that might otherwise violate the rule against perpetuities continues to be valid for the period of a life in being plus 21 years if the trust is to continue for such a life. Laws of 1959, ch. 146, § 1.

Because Edith meant for the trust to last until Jane sold the property and did not qualify when Jane had to sell the property, Edith meant for the trust to last for Jane's life. Jane then was a life in being when Edith executed her will. It has not been 21 years since Jane's death in 2021. Accordingly, the trust does not violate the rule against perpetuities under the 1959 Act. And even if Norman's right to the proceeds of the sale had not vested in the appropriate time period, the statute specifies that superior courts were to distribute such assets as intended by the trustor. Edith clearly intended that Norman receive half of the proceeds. The express trust created by Edith's will does not violate the rule against perpetuities.

### 1. Statutory Warranty Deed

Schmoll and Levy contend that the deed conveying the property to Jane also violates the rule against perpetuities, leaving Jane with a fee simple

absolute, and that the deed is not a valid testamentary instrument. We conclude that it was Edith's will, exempt from the rule against perpetuities, that created Norman's interest in the property and that the deed need not be a testamentary instrument.

### a. Fee Simple Absolute

Schmoll and Levy argue that the deed conveying the property to Jane violates the rule against perpetuities and that, as a result, Jane received the property as a fee simple absolute. We disagree.

A deed is simply the "written instrument by which land is conveyed." BLACK'S LAW DICTIONARY 520 (11th ed. 2019). A deed conveying land may place limitations that cause the created interest to expire at the occurrence of a stated event but if the limitation violates the rule against perpetuities, the remaining interest is a fee simple absolute. Hawe, 151 Wn. App. at 665.

Schmoll and Levy assert that the provision in the statutory warranty deed demonstrating Norman's interest in the property violates the rule against perpetuities. Jane's remaining interest, therefore, is a fee simple absolute. But in making that argument, Schmoll and Levy suggest the deed is the document that creates Norman's interest in the property. That is not the case. Edith's will created Norman's interest in the property. The deed is simply the mechanism by which the property can be conveyed. And because Edith's will creates an express trust exempt from the rule against perpetuities, the provision granting Norman's right in the property stands. The deed does not negate the language of Edith's will.

*b. Testamentary Instrument*

Schmoll and Levy also argue that the deed is not a valid testamentary instrument. But they fail to demonstrate why this would matter. Because Edith's will is a valid testamentary instrument and the deed is simply the conveying document, there is no need for the deed itself to comply with the Wills statute.

Edith's will created an express trust exempt from the rule against perpetuities and therefore her bequest to Norman stands.

<u>Full Effect</u>

Schmoll and Levy argue that, in concluding Edith's will created an express trust, the trial court failed to give effect to the entirety of the will. Carol responds that it is Schmoll and Levy who fail to give effect to every part of Edith's will. We conclude that Edith's will as a whole indicates the creation of an express trust.

It is worth reiterating that we review an order granting or denying summary judgment do novo. <u>Gilbert</u>, 13 Wn. App. 2d at 103-04. Accordingly, what the trial court did or failed to do is irrelevant to our inquiry.

When interpreting a will or other testamentary document, the court must give effect to the testator's intent, which must be "gathered from the instrument as a whole." <u>In re Estate of Bernard</u>, 182 Wn. App. 692, 704, 332 P.3d 480 (2014). Individual provisions of the will must be viewed in light of the entire document. <u>Bernard</u>, 182 Wn. App. at 704.

Schmoll and Levy argue that the will, in its entirety, works against the creation of an express trust. Given that Edith's intent for her children to share the proceeds of the property is clear, the conditional language that limits Jane's

15

discretion, and the fact that there is no language that requires Norman to survive Jane, we disagree.

To begin, Edith's will is clear that she intended her children to share the proceeds of the sale of the property: "[I]t being my intent that, except as provided in paragraph C(1) above, my daughter shall have all of my personal property, but that my daughter and son shall share equally in the net proceeds of the real estate sale."  Nothing in the rest of the document undermines that intent.  And because the intent of the testator is the central focus of interpreting a will, this unequivocal statement indicates the creation of a trust.

Next, Edith conveyed the property to Jane with limited discretion. Paragraph D states that "when [the property] is sold by [Jane], in her discretion . . . one-half . . . of the net proceeds of the sale (of the real estate only) shall be paid to [Norman]."  "When" is the key language, giving Jane the discretion on the timeline for selling, not whether to sell at all.  Edith did not grant Jane the property with full discretion to do whatever she chooses.  Rather, she gave Jane the ability to use the property up until sale, at which point Norman had an interest.

Lastly, the language of paragraph C(2) does not make Norman's interest contingent upon his survival.  Paragraph C(2) provides that Norman takes one half of the net proceeds of the property, "subject to the provisions of the next paragraph."  Schmoll and Levy assert that this means Norman's right to the property is subject to the rights conferred on Jane in paragraph D, including the "rest, residue and remainder" of Edith's estate.  Schmoll and Levy suggest that

this means Edith intended Jane to take the remainder of Edith's estate, not act as a trustee. But despite arguing the importance of considering the entirety of the document, their interpretation disregards the rest of paragraph D. Paragraph D closes on Edith's clear intent that her children share the estate. Norman takes his interest subject to that intent. And there is no language in the will to indicate that the bequest to Norman was contingent upon his surviving Jane. In fact, Article Fifth of the will states that if Jane were to predecease Edith, the residue was to be divided into four shares, one of which going to Norman. This displays that some of the bequests were predicated on survivorship, Norman's share of the net proceeds of the property just was not one of them.

In reading Edith's will as a whole, Edith created an express trust holding Norman's one-half interest in the sale proceeds.

### Conditional Cross-Appeal

Carol raises a conditional cross-appeal in the event that we reverse the second summary judgment order holding that Edith's will created an express trust and that Norman's estate is entitled to one-half of the property proceeds. Because we affirm, we do not address the cross-appeal.

### Attorney Fees

Lastly, Carol requests attorney fees under RCW 11.96A.150 and RAP 18.1. We decline to award fees.

RCW 11.96A.150 grants courts the authority to award attorney fees in any action initiated under Title 11 RCW. RCW 11.96A.150(2); In re Estate of Berry, 189 Wn. App. 368, 379, 358 P.3d 426 (2015). Under RCW 11.96A.150(1), a

court may award fees at its discretion, as it deems equitable, considering any and all factors it determines to be relevant and appropriate.

Here, because both parties presented legitimate arguments in the face of a real dispute, it would not be equitable to award fees. We decline to do so.

We affirm.

_Smith, C.J._

WE CONCUR:

_Hazelrigg, A.C.J_ _Mann, J._